# Skinner, *et al. v.* Southern Grocery Co.

*Bill to Set Aside Conveyance as Fraudulent.*

Decided Dec. 19, 1911.  56 South. 916.)

1. *Fraudulent Conveyances; Grounds of Invalidity; Intent.*—A conveyance intended to delay a creditor, though it does not defraud him or prevent him from obtaining satisfaction of his judgment, is fraudulent under the direct provisions of section 4293, Code 1907.

2. *Same; Invalid Transfers; Presumption.*—Where the effect of a conveyance is necessarily to delay or defraud creditors of the grantor it is conclusively presumed that it was made with intent to defraud, and hence, if the intent which determines the validity of a conveyance is necessarily to delay or defraud creditors of the grantor it is conclusively presumed that it was made with intent to defraud, and hence, the intent which determines the validity of a conveyance is the legal and not the moral intent.

3. *Same; Remedy of Creditors; Pleading.*—A bill to set aside a conveyance as fraudulent under section 4293, Code. 1907, need only allege facts which reasonably show an intent to hinder, delay or defraud creditors; but mere general allegations that a conveyance is fraudulent is insufficient.

4. *Same; Partnership Property; Partition.*—Where land was inherited by a number of heirs and most of them entered into a partnership to carry on a plantation, and when the partnership became involved, they made voluntary partition of the land by conveyances

between themselves, assigning the shares of those who were not engaged in the partnership and arranging for the assumption of mortgages upon the property, the conveyances were not fraudulent as to creditors of the partnership, for the owners had a right to partition.

5. *Same; Transfer; Conveyance to Corporation.*—Where a number of partners had been carrying on a plantation business which had become involved, and they transferred all their property to a newly created corporation in which they owned all the stock, and the corporation assumed all the debt, the conveyance to the corporation was not fraudulent as to the creditors of the partnership as it in no way hindered or delayed them.

APPEAL from Marengo Chancery Court.

Heard before Hon. THOMAS H. SMITH.

Bill by the Southern Grocery Company against W. B. Skinner and others, to declare certain conveyances fraudulent and void and to annul them. From a decree overruling demurrers to the bill respondents appeal. Reversed and remanded.

HENRY McDANIEL and PARTRIDGE & HOBBS, for appellant. In respect to the two allegations of the bill, the court must accept that least favorable to the pleader, and presume that the parties who acquired the stock still own it free from encumbrance.—*Rogers v. Brooks,* 99 Ala. 31; *Losch v. Pickett,* 12 Pac. 822. We must, therefore, consider the case strictly as one between the individual members of the partnership, and a creditor seeking to reach property belonging to these individuals in satisfaction of a partnership liability.—*Rapier v. Gulf City C. Co.,* 64 Ala. 330; *Ware v. Owens,* 42 Ala. 212; *Hatchett v. Blanton,* 72 Ala. 423. In passing on the demurrers, the direct allegations of intent must be eliminated as mere conclusions of the pleader.—*Flewellen v. Crane,* 58 Ala. 627; *McHan v. Ordway,* 76 Ala. 342; *Curran v. Armstead,* 101 Ala. 692; *Coal Co. v. Powder Co.,* 108 Ala. 218; *First Nat. Bank v. Acme Co.,* 123 Ala. 344. One of the inseparable incidents of ownership, the power of alienation, remains with the debtor even after

insolvency, it being required only that the disposition shall be such as to do no wrong to creditors.—*Hawkins v. Bailey*, 48 Ala. 376. It is not the kind of property but the quantum of the estate from a standpoint of capacity to pay debts that is considered in this respect.— *Levy v. Williams*, 79 Ala. 179. The question of intent is one of construction to be determined by the legal effect of the act.—*Myer v. Sulzbacher*, 76 Ala. 128; *Pollock v. Myer*, 96 Ala. 172. The transfer to the corporation did not have the effect of hindering or delaying creditors.—*Moore-Handley H. Co. v. Tower M. Co.*, 87 Ala. 206; *C. & C. G. Co. v. Fruitdale L. Co.*, 121 Ala. 340; *Taylor v. Dwyer*, 131 Ala. 91; *Reeves v. Peterman*, 109 Ala. 366. The burden is on complainants to allege the facts constituting fraud according to their legal effect.— *Heinz v. White*, 105 Ala. 670; *Warren v. Hunt*, 114 Ala. 506; *Little v. Stern*, 125 Ala. 609, and authorities supra. A share of stock is as tangible and as easily levied upon as a piece of real estate, and more easily sold.—182 Ill. 256; 86 N. W. 399; 48 S. W. 228; 14 S. W. 578; 21 Atl. 811; 133 Fed. 556.

B. F. ELMORE, and C. K. ABRAHAMS, for appellee. Equity will set aside as fraudulent, conveyances of property made to and for the formation of a corporation by debtors.—*Metcalf v. Arnold*, 110 Ala. 180; *Metcalf v. Arnold*, 132 Ala. 74; *Moore & Handley Hwd. Co. v. Towers Hwd. Co.*, 87 Ala. 206; *The Christian & Craft Gro. Co. v. Fruitdale Lmb. Co.*, 121 Ala. 340; 20 Cyc. 404. The bill is not multifarious in attempting to set aside separate and distinct conveyances among the several parties.—*Hill Bros. et al. v. Moone*, 104 Ala. 353. The legal duty of a debtor is to keep his property open to his creditors, and not to put it beyond their reach, nor dispose of it for any purpose other than the payment

of his debts. "Money is more easily shuffled out of sight than land."—Chief Justice Black. So are certificates of stock in a corporation, we submit, more easily shuffled out of sight and placed beyond the reach of creditors than lands.—*Levy & Co. v. Williams,* 79 Ala. 179. The transfers and conveyances of the lands to the corporation operate as impediments to the efficacious pursuit of the complainant's legal remedy to levy an execution on the said lands for the satisfaction of its debt, and equity will intervene to remove the impediment.—*Taylor et al. v. Dwyer,* 131 Ala. 110. It can make no difference in this case that the appellee might subject the certificates of stock to the satisfaction of its judgment, if the conveyances were made with the intent to hinder, delay or defraud, equity will set said conveyances aside.—*Henderson v. Farley Nat. Bank,* 123 Ala. 547; *McClarin v. Anderson,* 109 Ala. 571; *Beall v. Lehman, Durr & Co.,* 110 Ala. 446; Code 3739. The transactions being all be-between parties closely related, the several transactions should be closely scrutinized.—*Davis v. Vandiver,* 160 Ala. The complainant being an existing creditor at the time of the several conveyances, the burden is on the grantees to show the bona fides of the several transactions.—*Davis v. Vandiver,* 160 Ala. 454; *Russell v. Davis,* 133 Ala. 655. The insolvency of the parties is sufficiently averred, and so are the facts and knowledge and dealings and relations and conduct of all the parties to make the bill sufficient for the conclusion of fraud to logically flow, and to place the burden on the defendants (appellants) to show the bona fides of the various transactions.—*Coal City Coal & Coke Co. v. Hazard Powder Co.,* 108 Ala. 218.

MAYFIELD, J.—This is a bill by a single judgment creditor to set aside a number of conveyances of its debt-

.ors as fraudulent. Demurrers were interposed to the bill for want of equity, and because no sufficient facts were alleged, to show an intent on the part of the grantors to hinder, delay, or defraud creditors within the meaning of the statute against fraudulent conveyances (Code 1907, § 4293) under which the bill is filed. The demurrer was overruled, and from that decree respondents prosecute this appeal.

The property, the subject-matter of the suit, originally belonged to one W. A. Skinner, who died intestate on the 13th day of February, 1907, leaving the respondents as heirs and distributees of his estate, with the exception of R. P. Allen, Jr., who is the husband of one of deceased's daughters. These heirs and distributees at the time of or soon after the death of A. B. Skinner composed a partnership under the name of W. A. Skinner Company, and as partners became indebted to complainant, which debt was reduced to judgment in May, 1909, and was thereafter recorded in Marengo county. The partnership was also largely indebted to other creditors, including W. M. Spencer, in the sum of $11,000, and to Mrs. Watkins in the sum of $1,484. These two debts were secured by mortgages upon the lands in question. The partnership continued to do business up to March 5, 1908, upon the lands in question, and so continued to use the property of the estate of W. A. Skinner in connection with the business; but there is no sufficient averment that this property was a part of the assets of the partnership, it rather appearing from all the averments of the bill that it was the individual property of the partners, instead of being that of the partnership proper. But the bill is a little uncertain as to this. On February 27, 1908, prior to the rendition of complainant's judgment and to the acquiring of any lien, but during the continuancy of the partnership, all the heirs except

Louise Allen conveyed to her a part of the premises as her share of the estate of W. A. Skinner, and in consideration that she would assume and discharge the debt and mortgage of Mrs. Watkins. On the same date, February 27, 1908, Louise Allen and her husband conveyed to the other heirs, respondents in this suit, the remainder of the property in question and belonging to the estate of W. A. Skinner, or rather their share of such of the estate, in consideration of said conveyance by the others to Louise Allen, and of the assumption, by the others, of all the debts against the property conveyed, except the aforesaid debt of Mrs. Watkins, which had been assumed by Mrs. Allen. On March 5th, seven days after these conveyances, the Skinner Plantation Company, the respondent corporation, was formed; the sole officers and stockholders thereof being the respondents herein. Its authorized capital stock was $25,000, of which $20,100 was paid up, each of the corporators receiving 40 shares, of the par value of $100 each, except Allen, the husband of Louise Allen, who received only one share which was paid for in money, the other subscriptions being paid by the conveyance of the respective interests of the subscribers in the property inherited from W. A. Skinner, deceased. The corporation assumed to pay and discharge the debt and mortgage of W. M. Spencer, which was a charge upon the lands, amounting to $11,036. The lands conveyed to the corporation were valued at $20,000 over and above the debt and mortgage of Spencer. The bill further avers that this was all the property owned by the incorporators, but that the stock, as above stated, was all issued to the grantees and incorporators in the amounts shown. The bill seeks to have these several conveyances of this common property originally belonging to W. A. Skinner set aside as fraudulent, and to have the property subjected to the payment of complainant's

[Skinner, et al. v. Southern Grocery Co.]

debt or demand. The equity of the bill is undoubted if the facts averred are sufficient to withstand the demurrer.

No statute probably has been oftener construed by the courts than the statute under consideration. England and most all the states of the Union have statutes similar to this. St. 13 Elix. c. 5, is said to be the last of a series of English statutes which has ever since been the foundation of modern laws on the subject of fraudulent conveyances. The various state statutes upon the subject will be found to be largely modeled after it, and, in the main, re-enactments of it. This statute, however, both in England and America, has been held by the courts to be largely declaratory of the common law. Judge Dillon in the case of *Gardner v. Cole,* 21 Iowa, 205-210, said that the English statute had never been re-enacted in Iowa, but that the English statute was mainly, if not wholly, declaratory of the common law, which at an early date "set a face of flint against fraud in every shape," and so became the basis of American jurisprudence on this subject and that it was, therefore, in that state a part of the unwritten law.

The intent put into action, and which merely hinders or delays the creditor, is sufficient. It need not defraud him, nor deprive him wholly, or even partially, of his remedy for finally obtaining satisfaction of his debt or demand. The intent to defraud, however, must exist to render the transaction void; but this intent is sometimes a question of fact and sometimes a question of law. If the necessary consequence of a given act, on the part of a debtor, is to hinder, delay, or defraud his creditor, then the law conclusively presumes that it was committed with the intent to defraud, no matter what was the motive that prompted the act. Such would be a voluntary gift by an insolvent debtor of a large part

of his property. The motive might be "sweet charity," but the gift would nevertheless be fraudulent as to the donor's creditors. Such acts carry within themselves evidence of fraud against the creditors. The statutes therefore refer to the legal, and not to the moral, intent. The fraud meant to be prevented by the statute is a legal fraud. To invoke it is not necessarily to impute a corrupt or evil motive; on the other hand, an act of the debtor may be a fraud in morals, and dishonorable, but, unless it be a legal fraud upon the creditor, he cannot have it declared void under the statute.

For a bill to be sufficient under this statute, it is not necessary that it should set forth facts showing any formal or premeditated design to accomplish the illegal purpose. It is enough that it alleges facts which reasonably show an intent to hinder, delay, or defraud the creditors. If facts are thus alleged which reasonably show the necessary intent, the transaction cannot be sustained by showing that there is open to the creditors some remedy other than the setting aside of the fraudulent transactions. It has been uniformly held, however, that creditors' bills for the purpose of setting aside conveyances made by debtors as fraudulent must plainly and succinctly state the facts which constitute the fraud; that mere allegations, in terms, that the conveyance was "fraudulent" or was made with the "intent to hinder, delay or defraud," are not sufficient; that allegations which merely impute motives of fraud are not sufficient; that fraud must be charged, which should be done by setting forth the facts which constitute it. In the case of *Ft. Payne Furnace Co. v. Ft. Payne Coal Co.*, 96 Ala. 476, 11 South, 440, 38 Am. St. Rep. 109, the rule was thus stated by Stone, C. J.: "A mere general averment of fraud as that a conveyance, or a sale or other disposition made or threatened was or is with fraudu-

lent intent, is not sufficient in pleading. Fraud is a
conclusion. The conduct and facts from which the con-
clusion is deduced must be averred, so that issue
can be formed on the averments. We do not mean that
all the details must be given, but the substantial facts
which constitute the bad faith must be set out. And, to
obtain relief, they must be proven, if denied.—Story, Eq.
Pl. § 215a," etc. In *Flewellen v. Crane,* 58 Ala. 628-629,
the law upon the subject was thus stated by Brickell, C.
J.: "The conveyance sought to be vacated is exhibited
with the bill, and on its face recites that it is made
in payment of $20,000, due from the grantor to the
grantee. The averments of the bill are that the grantor
was insolvent at the time of the execution; and that it
conveyed all his property which was subject to levy and
sale, and that it is 'fraudulent and void as against pre-
existing creditors,' and was 'made with intent to hinder,
delay, or defraud said creditors.' It is now insisted that
these averments are insufficient to support the decree
vacating the deed—that there is no averment impeach-
ing the bona fides or sufficiency of the consideration ex-
pressed in it, no averment that the debt was not real,
and the conveyance accepted in payment of it; no aver-
ment that there was any secret trust for the grantor;
and no averment of any fact which authorizes the mere
conclusion, stated in the bill, that the conveyance is
fraudulent. Fraud is a conclusion of law from facts
stated and proved. When it is pleaded at law or in
equity, the facts out of which it is supposed to arise must
be stated. A mere general averment, without such facts,
is not sufficient."

These two cases we think clearly show that the facts
averred in this bill do not show any fraudulent intent
sufficient to support the general averments or conclu-
sions of the pleader as to fraud. The facts averred in

the two quoted cases we think come nearer showing fraudulent intent than do the facts in this case, yet in each of the two the bill was held insufficient, in that last quoted from it was so held after a final decree granting relief. It is very true that the facts constituting the transactions complained of are very fully and clearly set out in this bill. The conveyances complained of are set out, as well as the proceedings to organize the corporation to which the property was conveyed, but the trouble is these proceedings on their face are perfectly valid. They appear to be supported by sufficient considerations, and are all authorized by law, and are in a great measure declared valid by statute.

As a part of this partition Mrs. Allen agreed to discharge a mortgage lien of Mrs. Watkins to the amount of more than $1,400, the other owners agreeing to discharge that of Mr. Spencer to the amount of more than $11,000; they thus attempting to free the property for the use of the respective joint owners and their respective creditors. Surely there could be no fraud in this as against the other unsecured creditors who had no lien upon the property. It was clearly to their advantage that these prior and paramount liens should be discharged. We are wholly unable to see how the rights of any of the creditors other than Mrs. Watkins and Mr. Spencer were violated or could be injured by this voluntary mode of partition of the property and of the incumbrances thereon. And the two creditors named are not complaining. Mrs. Allen not being a debtor of complainant, it is certain that the latter had no right to proceed against her interest in the common property, and her right to have it set apart to her was both prior and paramount to the complainant's right to proceed against the interests of the other joint owners who were

its debtors; and it was certainly to the interest of complainant to have her share separated from the shares of its debtors.

No attendant badges of fraud are shown by the bill or its exhibits; but, on the other hand, according to the averred facts, as contradistinguished from the conclusions of the pleader, the transactions were perfectly valid and were made in the utmost good faith. None of the transactions were voluntarily, in the sense of not being supported by sufficient consideration. If the facts stated in the bill are true, the real equitable ownership of the property has never changed hands; and there is manifested no intent to conceal the real facts—all have been put upon record as the law directs. The whole of the property came to these respondents by descent. They therefore acquired it as tenants in common, and, of course, the rights of their creditors must of necessity attach to the property, subject to the rights of the joint owners to partition it by sale or by division in specie. The two deeds, made between these joint owners, the one to Mrs. Allen, by the other heirs, and the one, by her and her husband, to the other heirs, represented nothing but a partial partition—partition to the extent of separating Mrs. Allen's share from that of the others. No facts are averred to show that there was any fraudulent intent in the making of these conveyances. Nothing was done that a court of chancery would not have done for the parties had they been unable to agree upon a partition. The right of the complainant as against this property, for the satisfaction of its debt, of necessity was subsequent and secondary to the right of the joint owners to partition it, no matter if the joint owners had been its debtors. Having acquired the property by descent, as such joint owners, the right to partition was necessarily prior to the rights of complainant, who was then only a

creditor of a part of the owners, without any lien upon the property. This certainly disposes of the question of fraud as to the two conveyances among the joint owners for partition, and decides it against the contention of the complainant.

We will now proceed to notice the feature of the bill which deals with the formation of the corporation, and the conveyance of the property thereto in payment of the subscriptions of the stockholders to such corporation. There can be no doubt that a conveyance of property to or for the purpose of the formation of a corporation by a debtor, when made with the purpose or intent to hinder, delay, or defraud creditors, is void, as much as if it was attempted to vest the title in an individual or any other entity in fraud of the rights of creditors. As was said by this court in the case of *Metcalf v. Arnold*, 110 Ala. 184, 20 South. 301, 55 Am. St. Rep. 24, the formation of a corporation, investing it with the legal title to all the debtors' property, and parceling out the stock among the debtors and their wives, may be a new devise to defraud creditors. In the case of *Kingman v. Mowry*, 182 Ill. 256, 55 N. E. 330, 74 Am. St. Rep. 169, the question is discussed more fully than in any case we have found. Therein are reviewed the cases declaring conveyances of property for such purpose void, and that court states the law upon the subject as follows: "The contention of appellant is that the transfer by a debtor of his property to a corporation necessarily hinders and delays the creditor in the collection of his debts, and is in all instances a fraud in legal contemplation. Adjudged cases are cited as in support of this position. We have examined these cases, and, while such transactions were condemned in the instances then under consideration, we do not understand it to be deduced from them that it is a

[Skinner, et al. v. Southern Grocery Co.]

fixed rule of law that the formation of a corpora-
tion by the debtor, and the conveyance of all his prop-
erty to the corporation, though made in actual good
faith, is conclusively presumed to be fraudulent as a
matter of law.   *   *   *   It is believed that in each of the
cases relied upon some circumstances of fraudulent in-
tent, as the reservation of a trust in favor of the debtor,
the design to create and administer the corporation
for the mere purpose of enabling the debtor to conduct
his business under the guise of a corporation and es-
cape, even temporarily, his creditors, or some improper
disposition or manipulation of the stock interest of the
debtor to the injury of his creditors, or other like con-
sideration, determined the action of the court." It is
further said, in the above case, that the law has no uni-
versal rule that a mere change of the property into stock
of a corporation must be denounced as a fraud in legal
contemplation, when it may be clearly seen that it is not
so in fact. A debtor may so deal with his property as
to change its character, without subjecting himself, as
matter of law or of fact, to the charge that he has fraud-
ulently hindered, and delayed his creditors in the col-
lection of their debts. The statute condemns only those
transactions which are fraudulent as against creditors.
But it protects, or does not include, transactions which
are made upon a good consideration and which are bona
fide. As said by Mr. Bump (Fraud. Conv. § 201) : "The
intent of the act (the statute) is that the consideration
shall be valuable, for equity requires that a transfer
which defeats others shall be made on as high and good
consideration as the things which are thereby defeated.
Good consideration, therefore, is construed to mean a
valuable consideration as between creditors and others
claiming under the debtor."

If the conveyances in question were shown to have been without consideration, the bill would be sufficient; but the bill shows upon its face that all were made upon valuable and sufficient consideration. If the averments of this bill and its exhibits are true—and this is all complainant can ask on this hearing—its creditors now own as much property in value as they owned when its debt was created. It is true that the character of the property and the title thereto are changed, yet they still own all that they owned when this debt was contracted, and it has not been changed in character since it acquired its judgment lien. It is again true that the bill avers that complainant's debtors put all of their property into the corporation, but it also shows that they own all of the stock in the corporation, and therefore own the whole of the corporation as well as all its property in a court of equity, there being no indebtedness of the corporation alleged, except the mortgage debt due to Spencer. It is said by all the authorities that the mere fact that one is in debt or even insolvent does not deprive him of all dominion and control over his property; that his creditors have no right to require that his property shall remain of one certain character. He may exchange it for other property, or sell it, if in good faith and for a sufficient consideration; and, in like good faith to his creditors, he may apply the proceeds, in his discretion, to his debts, to purchases of other property, and to his maintenance. But a debtor is held to good faith with his creditors in such dealings. He occupies two relations with regard to his property—one, as the owner, and the other, as a quasi trustee for creditors. He is trusted by them on faith that he is dealing with it in good faith towards them. They therefore have this kind of an equitable claim as to the property. The law enjoins

upon the debtor the obligation and duty of paying his debts, and to that end holds him to the exercise of good faith in dealing with his property. If he acts in bad faith towards his creditors in dealing with his own property, and they are prejudiced thereby, they may, by virtue of the statute, have the transactions set aside as fraudulent.

So far as any facts appear from the allegations of this bill, these transactions were rather to the advantage than to the detriment of this complainant. In the first place, the property is not shown to be partnership property, but the individual property of the partners held jointly with others who were not debtors of the complainant, and whose interest in the common property, of course, could not be subjected to the payment of complainant's debt against the partnership. The effect of the transaction was to separate this interest not liable from that of the partners who were liable. The other transaction, conveying it to the corporation, which was merely substituted for the partnership, was to convert the land into partnership property, or corporate property, which was but a substitute for the partnership property. The conveyances also provide for the discharge of two mortgages upon this property, for more than $12,000, held by other parties than the complainant, thus relieving complainant's debtors of this large debt and making them much more able to discharge complainant's demand. If Mrs. Watkins and Mr. Spencer consented to this transaction—and the bill does not intimate that they objected—then certainly the conveyances did not tend to hinder, delay, or defraud complainant, but made it easier and more certain that it could collect its debt from the respondent and from their stock which they received in lieu of their interests in the land.

It therefore follows that the bill in its present shape was subject to the demurrers interposed, and that the chancellor erred in overruling them.

Reversed and remanded.

SIMPSON, McCLELLAN, SAYRE, and SOMERVILLE, JJ., concur. DOWDELL, C. J., and ANDERSON, J., not sitting.