267 So.2d 414

**Roy L. MURPHREE, individually and as Co-Executor of the Estate of Jesse W. Murphree, et al.**

**v.**

**Gus HENSON.**

**7 Div. 908.**

Supreme Court of Alabama.

Sept. 28, 1972.

Dortch, Wright & Cobb, Gadsden, for appellants.

Roy D. McCord and J. A. Hornsby, Gadsden, for appellee.

HARWOOD, Justice.

The decree here appealed from was rendered in a proceeding begun in October 1962. Gus Henson filed a bill in equity seeking specific performance of an oral contract to convey certain described land located in Etowah County, Alabama. The bill averred that the contract was made between complainant and Jesse W. Murphree, that complainant had been put in posses-

sion of the land, and had paid the purchase price therefor.

Murphree's demurrer to the bill as then amended was overruled in 1964, and Murphree then filed his answer to the bill. He denied the material averments of the bill, and averred his prior alienation of the described land, and set up as defenses the Statute of Frauds, the Statute of Limitations, and the non-joinder of essential parties as respondents.

On motion of the complainant the testimony of four witnesses was heard by the court on 29 September 1964.

Thereafter complainant amended his bill by adding Roy Murphree, the son of Jesse W. Murphree, and C. E. Parker, a lessee of Roy Murphree, as party respondents. It was averred that Roy Murphree was aware of the agreement between Jesse W. Murphree and Gus Henson, and a group of men involved in the agreement, and that no consideration for the deed of the land to Roy Murphree passed between the parties to the deed which was recorded on 10 January 1961. It was averred that the deed from Jesse W. Murphree to Roy Murphree was made by the parties to the deed with intent to hinder or defraud Henson in his claim to title to the land.

Roy Murphree and C. E. Parker filed demurrers to the bill as then amended.

The court appointed a commissioner to hear testimony on 10 January 1966, and thereafter the testimony of several witnesses was taken before the commissioner at various times, mostly during April 1966.

The death of Jesse W. Murphree on 5 August 1966, was suggested, and thereafter the suit was revived against his executors, Homer Murphree and Roy Murphree.

The bill was thereafter amended several times, the named respondents filing, or refiling, their demurrers thereto. The demurrers being overruled, the respondents separately and severally filed their answers denying all material averments of the bill as amended.

Further testimony of several witnesses was thereafter taken by the commissioner at various times, the last hearing before the commissioner being on 3 July 1969.

On 21 October 1969, the Chancellor ordered the commissioner to have made a transcription of all the testimony heard before him, and to file the same with the register, together with all exhibits offered at the hearings.

The respondents filed their final answer to the bill as amended, denying all the material averments of the bill and reasserting the defenses previously assigned in their answers.

Notes of submissions were filed by the complainant and respondents. The cause was submitted, and a decree rendered, on 22 January 1970.

The Chancellor decreed:

1. That the conveyance of the land here in question by Jesse W. Murphree to his son, Roy Murphree, on 10 January 1961, be set aside and held for naught, and the right, title, claim, or interest of Roy Murphree, and of the estate of Jesse W. Murphree be divested out of Roy Murphree, and the estate of Jesse W. Murphree, and the same be fully vested in the complainant Gus Henson, and

2. Roy Murphree, individually, and Roy Murphree and Homer Murphree, as executors of the estate of Jesse W. Murphree, deceased, as well as those holding under them as tenants, were ordered to immediately surrender possession of the land to Gus Henson.

3. Roy Murphree was ordered to satisfy any encumbrance or mortgage of record that he might have covering said land.

4. Roy Murphree, individually, and Roy Murphree and Homer Murphree, as executors of the estate of Jesse W. Murphree, deceased, were taxed with all costs, and the register was empowered

and directed to issue a writ of possession or such other legal process or proceeding as might be necessary to carry out the decree rendered.

For a better understanding of this case, we set out the following sketch of the facts disclosed by the evidence.

In 1933, Jesse W. Murphree and his wife were living in Jackson County, Alabama. Sometime after this he moved to Cherokee County, Alabama, but his wife refused to accompany him. Murphree worked as a farm laborer until he inherited a one-fifth interest in 340 acres of land. In 1938, Murphree purchased 88 acres of land in Cherokee County.

Murphree was a Holiness minister, and shortly after his purchase of the 88 acres of land, he entered into an arrangement with some fifteen young men of his congregation whereby they would pool their efforts and all work together in what is referred to as a "cooperative" by some of the group. One member testified that their agreement began as a "religious affair," and another testified that membership in the group was "fluid," in that from time to time a member would drop out and another new member would take his place.

The agreement between the members of the group was that they would contribute their labor and whatever farm tools they might own to cultivating the 88 acres purchased by Murphree, and when this tract was paid for, other land would be purchased until eventually each member of the group would acquire a farm. A part of this understanding or agreement was that the title to all land and property that might be purchased from fruits of the joint efforts of the group would be taken in the name of Murphree purely for the convenience of the parties, subject, however, to the agreement that when a member had accumulated sufficient credit by his labors to pay for the value of his farm, Murphree would deliver to him a deed conveying a parcel of land for a farm.

Murphree was unable to do physical work, and his role was to oversee and supervise the cultivation of the lands, and to superintend the purchase of additional land.

Additional land was to be purchased from the rents paid by members on the tracts of land on which they were placed, and also from their labor in a sawmill operation carried on by the group. The rents were a third of the corn raised, and a fourth of the cotton. Each member of the group would contribute as far as possible his labor to any other member of the group in the farming operations, and this was apparently done. No pay was expected for this type of aid.

None of these agreements was ever put in writing.

It appears that shortly after the agreement got underway, a sawmill was purchased. Each member of the group contributed his labor to this undertaking. Some worked at the mill, and others in cutting trees and hauling logs to the mill. The testimony was to the effect that the members of the group worked in the sawmill operation about six months out of the year during the winter months, and also during the farming season if their farming operations permitted. No member received any pay for this work at and around the sawmill. Undoubtedly the profits from this sawmill operation must have constituted a major portion of the profits accumulated by the group. Eventually an interest in some 3500 acres of land was acquired by the group, the title to all of the land being taken in Murphree's name.

The appellee Henson became a member of the group in 1942. Amos Pierce was another member of the group, and we mention him because of our later reference to the case of Pierce v. Murphree, 274 Ala. 20, 145 So.2d 207, wherein this court concluded that Pierce was entitled to specific performance of his oral agreement with Murphree for the purchase of a tract of land of which he had been put in posses-

346

sion by Murphree, and for which this court found he had paid for in full by his work as a member of the group.

Upon the appellee becoming a member of the group in 1942, he was assigned or "given" a tract of some 80 acres in Cherokee County, which he farmed. In addition the appellee worked at the sawmill, and assisted other members in work on their farms. This arrangement continued until 1948.

Under the arrangement with the group, Murphree bought a farm of 598 acres in 1948 or 1949 in Etowah County Alabama, known as the Rogers' place.

James C. Henson, a brother of Gus Henson, testified that at about this time Frank Kiser pulled out of the group, "* * * so he asked Gus for the 80 acres that had been given him, so he could let Frank Kiser have it, to settle with Frank when Frank pulled out. * * * Then he told Gus he would give him this property down here (Rogers' place property) if he would do that." (Par. ours.)

Other witnesses testified that Murphree had told the group when discussing the purchase of the Rogers' place that Amos Pierce, Wendell Rosser, and Gus Henson were to have farms of 120 acres each, and the remaining land was to be his.

In 1949 Pierce, Rosser, and Henson moved onto the Rogers' place, each being given or assigned 120 acre tracts adjoining one to the other. There seems little doubt from the testimony of witnesses, other than Gus Henson, but that Murphree determined and delineated the boundaries of these three tracts.

After Gus Henson moved onto the 120 acres of the Rogers' farm, he did work on a house which was on the tract and on which he lived. He fenced part of the tract as a pasture, and with the help of three or four other members of the group, he built a barn thereon. As before, he cultivated the land, paying 1/3 of the cotton raised thereon as rent. In addition Murphree placed 40 to 60 head of cattle on the

Rogers' place which were tended by Henson, along with four or five head of cattle of his own. The cattle were fed from the corn raised on the Rogers' place, so none of the corn was paid as rent.

Several members of the group testified that after Pierce, Rosser, and Henson moved onto their respective 120 acres on the Rogers' place, Murphree thereafter referred to the tracts as Henson's farm, Pierce's farm, and Rosser's farm. None of the members of the group questioned the rights of Pierce, Rosser, and Henson to the tracts they occupied on the Rogers' place.

Sometime prior to 1958, Murphree conceived the idea of purchasing land in south Alabama or Florida. He persuaded Rosser and Henson to accept this idea, it being his view that land would be cheaper and, if suitable places could be found, the Rogers' land could be used in payment therefor.

Gus Henson and Rosser did accompany Murphree to south Alabama. It is inferable that Rosser accepted a place in south Alabama, but no suitable place for Henson was obtained. Henson rented some land near Cottonwood, Alabama, from a Mr. Lewis, later worked in Dothan, and eventually returned to north Alabama.

Before leaving his farm on the Rogers' place Henson placed signs around his farm indicating he was the owner of the farm.

There was testimony from witnesses, other than the appellee, that Murphree had stated that if no land suitable to Henson was found in south Alabama, he could always return to his farm on the Rogers' place.

The evidence further shows that in 1951, Murphree's wife filed a bill for divorce. Murphree called a meeting of all of the then members of the group. His lawyer was present at this meeting and the matter of the Murphree divorce was reviewed. As a result, all members agreed to give Murphree a quit claim deed to all of the land acquired during the operation of the

group. This was to enable Murphree to make a property settlement with his wife in the divorce suit. The members of the group were assured their interests would be protected. No consideration was paid for the quit claim deed. Mrs. Murphree was granted a decree of divorce, and Murphree made a settlement with his wife by paying her $10,000.00 in cash, we presume as alimony in gross.

This identical matter of the effect of the quit claim deed given by members of the group was considered in Pierce v. Murphree, supra. This court found that the giving of the quit claim deed was nothing more than a part of the general plan or scheme for Pierce (and in this case Henson) to acquire a farm. While in Pierce v. Murphree, supra, it was stated that "the reasons for this maneuver are not at all clear", we infer from the record that the reason was to place Murphree in position where he could sell some of the land then held in his name, but acquired by the labor of the group.

In Pierce v. Murphree, supra, the entire testimony was taken before a commissioner. The Chancellor entered a decree denying specific performance of the oral contract to convey. This court reversed, and made an extensive finding of facts with this preliminary observation:

> "In the first place, the record is voluminous and is one of the most confusing we have examined. The evidence or the testimony of the parties and their witnesses is in hopeless conflict. Some of the witnesses flatly contradict themselves."

This observation is equally applicable to the present case, with the further observation that the confusion in the testimony of the witnesses in the present case is compounded in several instances because of contradictions between their testimony in the two cases.

In this present case the evidence was heard partly before the Chancellor, and partly before a commissioner. The Chancellor made an extensive finding of facts. A reading of the facts as found by the Chancellor shows that they are virtually a verbatim copy of the facts found by this court in Pierce v. Murphree, supra, with one material difference which we point out hereinafter. This observation as to the similarity between the facts as found by the Chancellor in this case with the facts as found by this court in Pierce v. Murphree, supra, is not said in any critical fashion of the Chancellor, for the facts in the two cases are in all material aspects the same, except as follows.

In Pierce v. Murphree, supra, the bill alleged that Murphree had agreed to sell Pierce the 120 acres described for the sum of $9500.00; that Murphree was to apply as a credit toward the sale price all amounts due Pierce for past services, and that Pierce would pay the balance of the purchase price by 1952. Pierce testified that the value of his services before moving to the Rogers' place when taken in connection with the value of his services on the Rogers' place, amounted to between $12,000.00 and $13,000.00. Pierce had withdrawn from the group arrangement in 1951.

In the present case, the bill as finally amended averred in effect that Henson was placed in possession of the 120 described acres under the agreement with Murphree and the group, and that by his services under the group arrangement he had fully paid for said 120 acres sometime prior to 29 August 1951, and had fully discharged his obligation of payment for the land to Murphree and all other beneficiaries under the agreement, having fully paid the purchase price for the 120 acres, and nothing remained to complete his record title but a deed to the described land from Jesse W. Murphree.

Several of the witnesses who were members of the group testified that Henson had worked side by side with them in the sawmilling operations, and in working on other members' farms when not working

his own land, and that in fact Henson had done more work on projects of the group than any other member, and for a longer period of time.

Appellant's assignment of error No. 2 is to the effect that the Chancellor erred in decreeing specific performance of the oral contract between Henson and Murphree.

While other assignments separately specify other matters, essentially they raise matters that could appropriately have been argued under assignment of error No. 2, and we will consider these points in our discussion of assignment No. 2 rather than taking up the assignments of error separately.

Appellant contends that this being an oral contract to convey land, and even though Henson was put in possession of the 120 acres on the Rogers' place, the Chancellor erred in decreeing specific performance in that the terms of the alleged contract are too vague to permit enforcement in that the specific land to be conveyed, the price to be paid, and the time at which a deed was to be delivered, are all uncertain.

Subsection 5 of Section 3, Title 20, Code of Alabama 1940, of our Statutes of Frauds, relative to what contracts must be in writing, provides:

"Every contract for the sale of lands, tenements, or hereditaments, or of any interest therein, except leases for a term not longer than one year, *unless the purchase money, or a portion thereof be paid, and the purchaser be put in possession of the land by the seller.*" (Emphasis ours.)

It is well established by our decisions that to authorize the specific performance of an agreement to sell land, all the terms of the agreement must have been agreed upon, leaving nothing for negotiation. Alba v. Strong, 94 Ala. 163, 10 So. 242; Tensaw Land and Timber Co. v. Covington, 278 Ala. 181, 176 So.2d 875.

However, as stated in 17 Am.Jur. 2d, Contracts, Sec. 78, p. 418:

"A contract which is originally and inherently too indefinite may later acquire precision and become enforceable by virtue of the subsequent acts, words and conduct of the parties. * * * Thus, the objection of indefiniteness may be obviated by performance and acceptance of performance."

In Alabama Great Sou. R. R. Co. v. North and South Alabama R. R. Co., 84 Ala. 570, 3 So. 286, wherein the Statute of Frauds was involved, it is stated:

"The uncertainty of the contract is also urged as a reason why it should not be enforced. * * * The appellee was, however, placed in possession of the right of way of appellant, and has continued in its daily use for over nine consecutive years, with the knowledge of the appellant, and those under whom it derives title. *The conduct of the parties, and uniform usage, thus acquiesced in, has supplemented this alleged uncertainty.*" (Emphasis ours).

In Smith v. Chickamauga Cedar Co., 263 Ala. 245, 82 So.2d 200, although the written contract there considered was held to be too indefinite to impose any obligations, note was taken of the Restatement of the Law of Contracts, Section 32, which was set out in full in the opinion. Paragraph c of the comment under Section 32, is as follows:

"Offers which are originally too indefinite may later acquire precision and become valid offers, by the subsequent words or acts of the offeror or his assent to words or acts of the offeree."

In Daily v. Minnick, 117 Iowa 563, 91 N.W. 913, one Cochrane had agreed to give to a newborn infant boy 40 acres of land if the parents would name the boy for him. This was done. Later, Cochrane purchased 40 acres of land, taking title in himself. Thereafter, from time to time, Cochrane declared to others that he intend-

ed the tract for the young child (James C. Daily), and would deed it to him when he was old enough. As he reached young manhood, Daily cultivated the 40 acres, opened a coal bank thereon, and cut timber. With Daily's consent, Cochrane built a house on the 40 acres which was occupied for a time by Cochrane's brother-in-law.

Cochrane died without ever having deeded the land to Daily. Daily, through his father, brought suit to quiet title in himself as against the heirs at law of Cochrane who denied Daily's title. The lower court quieted title in Daily, and the Supreme Court of Iowa affirmed, writing:

"* * * Cochrane's declaration in this case as to the land he intended to convey to the plaintiff in fulfillment of his promise was both a construction and an execution of his contract, and cleared the agreement of all uncertainty theretofore existing. It is fundamental that the acts of practical construction placed upon a contract by the parties thereto are binding, and may be resorted to to relieve it from doubt and uncertainty. Kelley v. Andrews, 102 Iowa, 119, 71 N. W. 251. This is simply an extension of the maxim 'Id certum est quod certum, etc.' * * *"

In addition to the testimony of several witnesses, other than Henson, as to Murphree's statements to the effect that the 120 acres on the Rogers' place to which Henson had moved upon relinquishing the tract he occupied in Cherokee County at Murphree's request was Hensons, there was introduced in evidence, over the objection of the appellants-respondents, the answer and cross bill, and Murphree's testimony in the **divorce** proceedings instituted by Mrs. Murphree in 1951.

In his answer and cross bill, Murphree recites and describes the agreement he had made with the "fifteen (15) young men who were his friends and neighbors around him," and further alleges:

"* * * This arrangement and trust relation has been followed since its inception about the year 1939, and in keeping with the understanding and trust your cross-complainant and Wendell Rosser, Amos Pierce, A. T. Morris, John W. Williams, *Gus Henson,* Joe Jennings, Jr., Marvin Cox, Hardy Cox, J. C. Henson and Olin Pool *have accumulated the lands described in the original bill of complaint,* with the exception of Parcels 9 and 10. * * *" (Emphasis ours.)

In his testimony in the divorce proceedings, which was signed by Murphree on 2 July 1952, Murphree testified:

"* * * Since Mrs. Murphree filed her application for divorce I filed a cross bill, and set up that several men who had worked with me through the years owned an interest in this property. *While the matter has been pending I have made a settlement with all the parties I named—I got quit claim deeds. All the parties named as respondents in the cross-bill have reached an agreement with me and given me a quit claim deed so that I can make a settlement with them.* Since this suit has been pending my wife and I have come to an agreement about division of the property, through her attorney Mr. Keener. By the terms of that agreement I am to pay her the sum of $10,000, and she relinquishes all her right, title, claim and interest in and to the property described in my cross-bill. * * *" (First emphasis ours.)

We hold that in light of the evidence submitted by Henson or the reasonable inferences therefrom, the Chancellor was not palpably wrong in finding that the contract between Henson and Murphree had, by their acts been construed and executed by them, thus removing the preexisting uncertainties of the contract.

It is appropriate to note here that one of the assignments of error of appellant goes to the apparent consideration by the Chancellor of the cross complaint filed by Mur-

phree in the divorce proceedings, since the Chancellor sets forth material portions of the cross bill in his decree. Objections to this evidence had been interposed and noted at the time it was offered.

Counsel contends that the cross bill was improper evidence to be considered in that it was not sworn to by Murphree.

■ Unsworn pleadings signed only by an attorney for a party, filed in other proceedings, are ordinarily not admissible as admissions, unless it be shown by independent evidence that the pleadings were drawn under the authority of the party in whose name the pleading is filed. Birmingham Electric Co. v. Wood, 222 Ala. 103, 130 So. 786. This for the reason formal allegations are presumed to be made on by the attorney on general instructions.

There are quotations from Jones on Evidence, Greenleaf on Evidence, and Wigmore on Evidence, set forth in Richardson v. State, 204 Ala. 124, 85 So. 789, apparently with approval, the substance of such quotations being that where detailed matters are set forth in the pleading, it cannot be presumed that such matters were alleged by the attorney under general instructions, but the presumption is that such matters were alleged under the specific instructions of the client, and in such situations the pleadings are admissible.

■ The answer and cross bill filed in the Murphree divorce proceedings contain many detailed and specific allegations that could not have been known to an attorney unless instructed as to them by Murphree. It would seem that on this basis no error attached to a consideration of the cross bill by the Chancellor.

Further still, Murphree's testimony in the divorce proceedings supported and elucidated the allegations of the cross bill in detail. Clearly his testimony in the divorce proceedings was admissible. It is to be noted that he testified: "Since Mrs. Murphree filed her application for divorce, I filed a cross bill, and set up * * *."

All of the above tends to show to the required degree that the cross bill with its specific allegations was filed under the authority of Murphree.

Under assignment of error 19, counsel for appellant contends that the court could not have made the findings of fact as set forth in the decree without in "many instances" considering as admissible evidence that which should not have been considered under the "Dead Man's Statute." This statute would of course bar consideration of that part of Gus Henson's testimony relating to his transactions with Jesse Murphree which are adverse to Murphree's estate.

It also appears that Joe Jennings, Jr., testified that he had filed a claim against Jesse Murphree's estate, and it is inferable that this claim grew out of the group arrangement. A decree in favor of Henson would be of beneficial use to Jennings relative to his claim. He would gain by the direct operation of the decree which could be legal evidence in support of his claim. Oliver v. Williams, 163 Ala. 376, 50 So. 937. See also Dunlap, Adm'r v. Mobley, Adm'r., 71 Ala. 102.

■ It is clear that those parts of Jennings' testimony, and those parts of Gus Henson's testimony, relating to their transactions with Jesse Murphree should not have been considered by the Chancellor. It is to be noted, however, that at the start of the hearings the Chancellor announced:

"Well, I anticipate that there will be a great deal of controversial testimony, and I am directing the attorneys, under the Equity Rule, to note your objections or motions, and the Court will consider only the legal testimony."

■ The above pronouncement was in accord with the provisions of Act No. 101, Gen.Acts of Alabama 1943, p. 105, which appears as Sec. 372(1), Title 7, Michie's 1958 Recomp.Code of Alabama. This Act provides that in equity cases it is not required that objections be interposed to any

evidence, and on consideration of such cases the court, both the Circuit Court, in Equity, and this Court on appeal, will consider only such testimony and evidence as is relevant, material, competent and legal. Where equity trials proceed under the provisions of this statute, the presumption is that only relevant, material, competent and legal evidence was considered by the Chancellor in arriving at his decree. McCullar v. Conner, 287 Ala. 455, 252 So.2d 422.

After consideration of all the evidence presented below, it is our conclusion that if the testimony of those witnesses which is incompetent because of the operation of the Dead Man's Statute be laid aside, there yet remains sufficient legal, competent, material and relevant evidence, which if believed to the required degree, supports the decree rendered.

Under appropriate assignments of error, counsel for appellant contends that this decree should be reversed because of the omission of both Mrs. Roy Murphree, the wife of one of the respondents, and the Alabama Power Company, as respondents. Counsel asserts that each is essential and indispensable parties to this suit.

█ As to Mrs. Roy Murphree, it is clear that any interest she might claim in the land in question is derivative of the interest her husband might have in the land, she not being named as a grantee in the 1961 deed from Jesse Murphree to Roy Murphree conveying the land in question. If Roy Murphree acquired no interest in the land by virtue of this deed, then clearly his wife would not. No fraudulent acts in the procurement of the deed were attributed to Mrs. Murphree. She, therefore, was not a necessary party to these proceedings.

█ As to the omission of the Power Company, it appears from the somewhat meager evidence that the Power Company filed condemnation proceedings against a portion of the Rogers' place on 30 September 1964, in the United States District Court for the Northern District of Alabama. A part of the land claimed by Gus Henson was involved in these condemnation proceedings. Roy and Hazel Murphree, and persons unknown were listed as owners of the land in the condemnation proceedings.

The complaint in the present case was filed on 9 October 1962, over two years prior to the condemnation proceedings.

While the present case was being tried, Roy Murphree and the Power Company engaged in negotiations regarding the fair market price of the land to be condemned. Roy Murphree testified that no agreement was arrived at in these negotiations, and no settlement made. The record is silent as to any award being made in the condemnation proceedings.

█ While the Power Company is not a purchaser in the usual sense, in actuality eminent domain is in the nature of a forced sale. Beeland Wholesale Co. v. Kaufman, 234 Ala. 249, 174 So. 516.

In 81 C.J.S. Specific Performance § 118f(3)(a), it is stated that:

"A purchaser pending a suit by another against his vendor for specific performance of a prior contract to sell the subject matter of the suit ordinarily is not a necessary party to the suit * * *."

To this same effect is King v. Gant, 77 Okl. 105, 186 P. 960.

Under the facts shown, we hold that the Alabama Power Company was not a necessary or indispensable party to the proceedings below.

█ Counsel for appellant contends that laches should preclude relief in this case because of Henson's delay in bringing his suit.

In 1961, Jesse Murphree attempted to convey the 120 acres to Roy Murphree. This suit was filed in October 1962. Jesse Murphree did not die until 1966. He

participated in the case of Pierce v. Murphree, supra, in which to a most substantial degree the same legal principles and facts are involved.

■■■ As stated in Waddail v. Vasser, 196 Ala. 184, 72 So. 14:

"It has been well decided that mere delay that has wrought no disadvantage to another, or that has not operated to introduce changes of conditions and circumstances in consequence of which 'there can be no longer a safe determination of the controversy' will not serve to bar a complainant's right or remedy."

To the same effect see Craig v. Root, 247 Ala. 479, 25 So.2d 147.

We hold that under the facts and circumstances of this case, the complainant should not be denied relief because of laches.

Appellants contend that Roy Murphree was a bona fide purchaser in 1961 of the land in question by virtue of the deed executed by his father to him conveying the entire Rogers' place.

■■■ The elements of a bona fide purchase include a purchase of the legal title to the property in good faith, for an adequate consideration, and without notice of any claim of interest in the property by any other party. Lightsey v. Stone, 255 Ala. 541, 52 So.2d 376; Orso v. Cater, 272 Ala. 657, 133 So.2d 864. Notice of a claim of interest in real property can be inferred from knowledge of facts sufficient to put a reasonably prudent person on inquiry, which if followed up, would lead to the discovery of the title asserted by some other party. Stone v. Lacy, 245 Ala. 521, 17 So.2d 865; or as otherwise stated, knowledge of facts which would lead an ordinarily prudent person to further inquiry of the title of the vendor. Dewyer v. Dover, 222 Ala. 543, 133 So. 581.

The evidence shows that Gus Henson had been in possession of the 120 acres on the Rogers' place from 1949 to 1955, when he went to south Alabama with Jesse Murphree. At this time Henson left no-trespassing signs indicating he was the owner of the tract. Roy Murphree was living with his mother at the time of the divorce proceedings between his mother and father. The Pierce suit involving Jesse Murphree's agreement with Pierce, Henson, and others, was in litigation at the time Roy bought the land in 1961. Mrs. Roy Murphree testified she and her husband knew of this suit at the time the deed was given by Jesse Murphree in 1961. Amos Pierce testified he had heard Jesse Murphree explain to Roy the agreement between himself and the group on several occasions.

■■■ The Chancellor found that Roy Murphree was not a bona fide purchaser without notice of Gus Henson's claim of interest. We are in accord with this conclusion.

The Chancellor further found that under the conflicting evidence as to the adequacy of the consideration allegedly paid by Roy Murphree for the 1961 deed, that such consideration was inadequate. Without questioning the Chancellor's conclusions in this regard, we see no need to discuss this additional finding by the Chancellor since we are in agreement with the Chancellor that Roy Murphree was not a purchaser without notice of Henson's claim.

Under assignment of error 7, counsel for appellant argues that the court erred in overruling Roy's demurrer to the bill in that no facts were averred to show fraud in the execution of the deed by Jesse Murphree conveying the Rogers' place to Roy Murphree.

■■■ A bill to set aside a conveyance as fraudulent need only allege facts which reasonably show an intent to hinder, delay, or defraud another in his lawful claim to the land at the time of the delivery of the allegedly fraudulent deed. Skinner v. Southern Grocery Co., 174 Ala. 359, 56 So. 916.

■ We have carefully considered that portion of the bill as amended charging Roy Murphree with receiving the deed with intent to hinder, delay, and defraud Gus Henson in his lawful claim to the land. In this aspect the bill is quite lengthy and we will not set it out. Suffice to say that substantial facts are averred as to the dealings and relationship between Roy and Jesse Murphree in reference to the giving of the deed from which bad faith would necessarily be deduced. The bill was not subject to demurrer on the grounds that the allegation of fraud was a mere conclusion.

■ Under assignment of error 4, counsel for appellants argue that because Henson paid rent to Murphree he should be considered only a tenant of Murphree. It is true that Henson paid rent, but under the agreement of the group it was paid to Murphree not as a landlord, but for the purpose of adding to the pool of funds to be used for acquiring additional lands so that each member of the group could acquire a farm.

The evidence is overwhelming that Henson was in possession of the lands he cultivated, both in Cherokee County and in Etowah County (Rogers' place) solely under the agreement between Murphree and the members of the group, and not as a tenant of Murphree's. We find no merit in appellants' contention under assignment of error No. 4.

At least four witnesses testified ore tenus at length before the Chancellor prior to a commissioner being appointed to conduct further hearings. A large number of witnesses testified before the commissioner. Later, in ore tenus hearings before the Chancellor, much documentary evidence was received in evidence.

■ The rule is that where the evidence is heard ore tenus by the Chancellor, *or partly so,* the usual presumption in favor of the trier's findings of fact will be indulged and his findings will not be disturbed on appeal unless palpably wrong and contrary to the great weight of the evidence. Collier v. Woody, 257 Ala. 391, 59 So.2d 670; Lott v. Keith, 286 Ala. 431, 241 So.2d 104; Royal Indemnity Co. v. Pearson, 287 Ala. 1, 246 So.2d 652.

After consideration of this entire record, we conclude we would not be justified in disturbing the findings of the Chancellor made in this case, or in disturbing the decree rendered pursuant to such findings.

Affirmed.

HEFLIN, C. J., and MERRILL, COLEMAN, BLOODWORTH, MADDOX, McCALL and SOMERVILLE, JJ., concur.