The original suit filed by Melvalene Adams against her ex-husband, Bill Adams, and David and Wanda Faye Troglen, sought the reformation of two deeds exchanged between her and her ex-husband via a divorce decree, the reformation of a deed subsequently conveyed to Mr. and Mrs. Troglen *Page 1147 
by Bill Adams, and compensatory and punitive damages. The court severed the issue of damages and heard the issue of reformation without a jury. The equitable relief requested, namely, title to a certain 5 foot strip of property crossing Mrs. Adams' driveway, was granted. Mr. Adams and the Troglens appealed, questioning primarily the sufficiency of the evidence. We affirm.
 FACTS
Mr. and Mrs. Adams were married in 1956. They bought 5 acres of property near Madison in 1959. In 1966, they mortgaged 1 acre of the 5 acres to finance the construction of a house on the 1 acre. In contemplation of having a county road run along the southern boundary of the property, the 1 acre tract stopped 25 feet short of the southern boundary. In August, 1972, Mr. and Mrs. Adams conveyed a 20 foot right-of-way along the southern boundary to the county. Mr. and Mrs. Adams subsequently were divorced in September of 1973. By agreement, Mrs. Adams received the 1 acre with the residence on it and Mr. Adams, the remaining 4 acres. Mrs. Adams, being unaware that between the 1 acre and the deeded right-of-way a 5 foot strip of property (she had let Mr. Adams handle the mortgage and right-of-way deed), told her attorney to base the exchange of deeds between her and Mr. Adams on the description of the mortgage. Mr. Adams knew about the 5 foot strip, but testified that he forgot to mention it during the divorce proceedings.
"Q. But you did know —
 "A. I knew about signing the deeds and so on and, alright, I was definitely aware there was a twenty-five foot strip in here before I deeded a twenty-foot strip to the County before the divorce procedure.
. . . . .
"Q. And you knew you had only given twenty feet?
 "A. I knew it, that's right, that I had signed the deeds in the past giving the County twenty feet, but when I was getting my divorce I didn't even think of the deed deeding the County twenty feet. I wasn't conscious of it. You know, you were trying to settle the divorce and this —
. . . . .
 "Q. Did you assume that transfer of that one acre tract would give her access to Greenwood Drive?
"A. I didn't assume that.
"Q. Did you assume it would not give her access?
"A. No sir, I did not."
(The parties stipulate that neither attorney handling the divorce was aware of the 5 foot strip between the 1 acre and the road.)
In April, 1975, Mr. Adams conveyed to his friend of many years, Mr. Troglen (deed was to Mr. and Mrs. Troglen), a lot adjacent to the 1 acre owned by Mrs. Adams, together with the 5 foot strip fronting the 1 acre. That same month Mr. Troglen put up "For Sale" signs along the 5 foot strip. The signs gave Mrs. Adams her first notice that she did not own the property up to the right-of-way. Mrs. Adams was not living at the house in April. It had partly burned the prior March and repairs took approximately 2 months. On June 27, 1975, Mr. Troglen wrote Mrs. Adams a letter offering to sell or lease to her the 5 foot strip, stating that otherwise she was trespassing, and that to protect his title he would have to erect a fence. On September 9, 1975, Mr. Troglen put up a barbed wire fence along the 5 foot strip and on September 10, filed a complaint for trespass with the Madison County Sheriff's Department.
At the time Mr. Troglen purchased the lot and 5 foot strip, he was aware of the driveway crossing the strip.
 "Q. Mr. Troglen, did you know Mrs. Adams at the time you purchased that lot was coming from Greenwood Drive, was coming off Greenwood Drive onto the driveway which led to her house across that strip?
"A. Right.
"Q. You knew that?
"A. Yes. *Page 1148 
 "Q. Did you contact her by phone before you acquired it?
"A. No, no.
 "Q. Was the first contact you made a letter that you wrote her dated June 27, 1975?
"A. Right.
 I
Appellants contend that Mrs. Adams' suit for reformation of the deeds is a collateral attack on the divorce decree. The question, however, is not whether the divorce decree should stand, but, rather, whether the doctrine of res judicata and collateral estoppel precludes consideration of reforming the deeds. We do not believe it does.
Facts that are merely assumed in the pleadings or decision of a prior case, but which are not placed in issue or essential to the judgment are not precluded from being raised in a subsequent suit between the same parties on a different cause of action.
 "A judgment is conclusive as to facts admitted by the pleadings or assumed by the decision, where they were essential to the judgment, and were such that the judgment could not legally have been rendered without them; but not where they were only incidentally or collaterally in question in the suit, or were not necessary to its determination, or where public rights are involved." 50 C.J.S. Judgments § 733, p. 224 (1947).
In Mutone v. Mutone, Sup., 236 N.Y.S.2d 799 (1963), the court held that a husband was not precluded from seeking reformation of a separation agreement on which the wife had already sued for payment.
 "A wife's action upon a separation agreement to collect alimony due thereunder, resulting in a judgment in the wife's favor, is not a bar to a subsequent action by the husband to reform the separation agreement. [Citations omitted.] Such a determination, however, would be res adjudicata as to the existence of a valid separation agreement, since the existence of a valid separation agreement is an essential element in an action to recover alimony allegedly due thereunder. [Citations omitted.] Id. at 802.
In Lehrman v. Lehrman, 203 Or. 30, 278 P.2d 139 (1954), the Oregon Supreme Court allowed reformation of a divorce decree to include the addition of a property description. Similarly, inSedlacek v. Sedlacek, 107 Ill. App.2d 334, 246 N.E.2d 6 (1969), a husband was allowed to seek reformation of a divorce decree.
In the present case, the specifics of the legal description found in the divorce decree were not at issue and were not essential to the decree. See State v. Mudd, 273 Ala. 579,143 So.2d 171 (1962); Ashurst v. Preferred Life Assur. Soc. ofMontgomery, 282 Ala. 119, 209 So.2d 403 (1968).
 II
Tit. 47, § 136, Code of Alabama 1940, Recompiled 1958, provides:
 "§ 136. When equity court may revise conveyance. — When, through fraud, or a mutual mistake of the parties, or a mistake of one party, which the other at the time knew or suspected, a deed, mortgage, or other conveyance does not truly express the intention of the parties, it may be revised by the court of equity on the application of the party aggrieved so as to express that intention, insofar as this can be done without prejudice to rights acquired by third persons in good faith and for value."
At the trial level the burden was on Mrs. Adams to prove her case by clear, convincing, and satisfactory evidence. FidelityService Ins. Co. v. A.B. Legg Sons Burial Ins. Co., 274 Ala. 94, 145 So.2d 811 (1962). The question presented on appeal, the evidence having been heard ore tenus, is whether the lower court's decree is supported by competent evidence, or whether it is plainly and palpably wrong. Fidelity Service Ins. Co., supra; Murphree v. Henson, 289 Ala. 340, 267 So.2d 414 (1972); and 66 Am.Jur.2d, Reformation of Instr., § 130, pp. 653-654. *Page 1149 
We conclude from the record that there is sufficient evidence to support the trial court's decision to reform the deeds. Our review of the weight of the evidence does not convince us that the decree is plainly and palpably wrong.
 III
The remaining question is whether the Troglens' rights in the 5 foot strip are being prejudiced. This depends on whether Mr. Troglen took without notice of Mrs. Adams' claim of interest in the 5 foot strip.
 ". . . Notice of a claim of interest in real property can be inferred from knowledge of facts sufficient to put a reasonably prudent person on inquiry, which if followed up, would lead to the discovery of the title asserted by some other party. . . ." Murphree v. Henson, supra, 289 Ala. at 352, 267 So.2d at 425.
See also Leslie v. Click, 221 Ala. 163, 128 So. 170 (1930). Again, our scope of review is limited to whether the trial court's decision, that Mr. Troglen did take with notice, is palpably wrong and contrary to the great weight of the evidence. Murphree v. Henson, supra.
Mr. Troglen knew at the time he purchased the lot and 5 foot strip that Mrs. Adams used the driveway crossing the strip for access to her residence, and had no reason to believe Mrs. Adams was crossing property other than her own. Yet, Mr. Troglen made no inquiry as to whether Mrs. Adams claimed an interest therein.
We believe the evidence supports the lower court's conclusion that a reasonably prudent person would have made inquiry and that the Troglens would not be prejudiced by a reformation of their deed to exclude the 5 foot strip.
We therefore affirm the decision of the trial court.
AFFIRMED.
TORBERT, C.J., and BLOODWORTH, JONES and EMBRY, JJ., concur.