ADAY *vs.* ECHOLS, Adm'r, et als.

1. To authorise a decree for the specific performance of a parol agreement for the sale of land, on the ground of part performance, it is indispensable, not only that the acts which are alleged to be in part performance, but the contract itself as stated in the bill, should be established by clear and definite proof.

2. If the proof fails to establish the contract, as alleged, or any of its terms are left in doubt or uncertainty, a specific performance cannot be decreed; for should it be, it would be uncertain whether the chancellor was enforcing the contract of the parties, or one, which he has made for them.

3. Where, therefore, the bill alleges that the payments were to be made in *five equal annual* instalments, and the proof is that they were to be made in *four or five annual* instalments, it appearing that part of the purchase money is still unpaid, a decree for the specific performance of the contract is properly refused.

4. Where a purchaser of land, who, upon the faith of the contract, has entered into possession and made valuable improvements, files his bill for a specific performance, but fails to make out such a case as will entitle him to the relief sought, the bill may be retained for the purpose of allowing him compensation, if he has not a full and adequate remedy at law.

5. In such case, the land should be charged, as against the vendor and his representatives, with the payment of the amount ascertained to be due to the complainant, unless some circumstance appears that would render it improper to do so. The insolvency of the vendor's estate, (he being dead) is not a sufficient reason for refusing so to charge it.

6. This court cannot undertake to say that a paper, purporting to be a receipt, may not bear marks, or evidence on its face, conclusive to show that it is not a genuine receipt, although the signature attached to it may be in the handwriting of him, whose receipt it purports to be.

7. The fact, that the signature to an instrument, which has not been acted on as evidence by the chancellor, and on which the equity of the bill was in no way dependant, was proved before him at the hearing, does not preclude the master, when such instrument is offered in evidence upon a reference to him, from enquiring into its genuineness, for reasons apparent on the face of the instrument, irrespective of the signature.

Error to the Chancery Court of Madison. Tried before the Hon. D. G. Ligon.

THIS bill was filed by the plaintiff in error against the administrator and heirs at law of James C. Wayland, deceased, for the specific performance of a parol contract, entered into by the complainant with the said Wayland in his life-time, for the purchase of a certain lot of land adjoining the town of Huntsville. It alleges that about the first of January 1837, the complainant purchased of Wayland about twelve acres of land, for four thousand dollars, to be paid in equal annual instalments, the last falling due the first Janaury 1842; that said purchase was by parol, no written evidence of the contract having been executed by Wayland, nor any note for the purchase money by the complainant; that the complainant went into possession about the ninth of January 1837, and in the month of March 1838, disposed of five acres, and a fraction over, of said lot, to one Rice for two thousand dollars, to whom Wayland agreed to look for the payment of that sum and to release complainant to that extent; that afterwards Wayland, not being able to make said Rice a good title to the lot of five acres, and fraction over, agreed with him to take it back and rescind the contract; that the complainant from the time he went into possession has continued to occupy the remainder of the lot, of about six acres, and has paid eighteen hundred or two thousand dollars, leaving but a small balance, if any, due on that portion of the original purchase retained by him; that during the life-time of Wayland, and with his knowledge, complainant made valuable improvements on said lot, amounting to two thousand dollars, and consisting of a dwelling house, &c. The bill offers to pay whatever balance may be found due, and prays a specific performance.

The answers put in issue all the material allegations of the bill, and that of Echols alleges that before the bill was filed the estate of his intestate was reported insolvent and so declared by the Orphans' Court, &c. This answer also sets up notes of the complainant, to the amount of between four and five hundred dollars, dated prior to first January 1841, and which were held by Wayland at the time of his death, and it is prayed that they be allowed, if an account should be ordered. The complainant after the coming in of the answers, amended his bill, and made an exhibit of a paper, purporting to be a receipt executed by Wayland, in the following words: "Received of John F. Aday four hundred dollars, it being the full amount of all notes now

Aday v. Echols, adm'r, et als.

due against said Aday.   February — 1841.—J. C. Wayland,"
which he insisted was a full discharge of the notes set up in Ech-
ols' answer.   The signature to this receipt was proven *viva voce*
at the hearing to be in the hand-writing of Wayland.   The
chancellor refused to decree a specific performance, because of
the uncertainty of the evidence as to the precise terms of the
credit, the only witness who testified in respect to the payments
stating that the purchase money was to be paid in *four or five*
annual instalments ; but the contract of sale and the amount
agreed to be given having been fully proved, he retained the
bill for the purpose of allowing compensation for improvements,
&c., and ordered a reference to the master to take an account.
On this reference, the receipt above mentioned was offered in
evidence and objected to by the defendants, on the ground that
it bore on its face evidence that *it was not a genuine instrument,*
and the master on inspection of it was of that opinion and exclu-
ded it from his consideration.   From this there was an appeal
to the chancellor, who sustained the action of the master.   The
master having reported the sum of $1067 $\frac{15}{100}$ in favor of the
complainant, the chancellor confirmed the report, but refused to
charge the land with its payment, because the estate had been
reported insolvent.   The ruling of the chancellor in reference
to the receipt, and his refusal to decree a specific performance
and a charge on the land for the amount ascertained to be due
the complainant, are the errors assigned.

CLAY, for the plaintiff.

ROBINSON, for the defendants.

DARGAN, C. J.—To entitle a complainant to a decree for
the specific performance of a parol agreement for the sale of
land, on the ground of part performance, it is indispensable, not
only that the acts alleged to be in part performance should be
clearly proved, but the contract itself, as alleged in the bill,
should be established by clear and definite testimony.   If the
proof fails to establish the contract as alleged, or if any of the
terms be left in doubt or uncertainty, then a specific performance
cannot and ought not to be decreed, for it would then be uncer-
tain whether the chancellor was enforcing the contract the par-
ties had agreed upon, or whether he was making one for them,

and decreeing its execution. The proof, therefore, must not leave the contract, or any of its terms in doubt. This is the result of all the well considered cases on this subject.—See Story's Eq. vol. 2, p. 69, § 764, and authorities cited; also, Goodwyn v. Ligon, 4 Port. 297, and the cases there refered to.

Applying this principle to the allegations of the bill, and to the proof, we fully agree with the chancellor, that the evidence does not establish the contract with sufficient certainty to warrant a decree for a specific performance. The bill alleges a sale by Wayland of twelve acres of land, on the first day of January 1837, for the sum of four thousand dollars, to be paid in equal annual instalments, the last falling due the first of January 1842, consequently the purchase money was to be paid in five annual equal payments. It also alleges that in March 1838, the complainant sold five acres and a fraction over to one Rice, who agreed to pay Wayland two thousand dollars, but that Rice being dissatisfied with the title of Wayland, it was agreed that Wayland should take this portion back, and credit the complainant with the amount of two thousand dollars on the original purchase, thus reducing the purchase of complainant to six acres and a fraction, and the purchase money to two instead of four thousand dollars. But the time when the payments were to be made remained the same, that is, the two thousand dollars instead of four, was to be paid according to the bill, in five annual instalments. Many witnesses were examined who proved the contract of sale and the amount agreed to be given, but none of them speak of the time the payments were to be made except one, who says that the money was to be paid by the complainant in *four or five annual instalments.* Now if it had been alleged and proved that the entire purchase money had been paid in full, this perhaps, would have superseded the necessity of proving the time agreed on when the payments should be made, but it will be at once seen, that when all the purchase money is not paid, and the sale is on credit, that the time of payment becomes material, for the purpose, at least, of ascertaining the amount due to the vendor. The testimony, however, in this case leaves it in doubt whether the money was to be paid in four or five annual instalments, and it is shown that part of the purchase money is still unpaid; a decree of specific performance was, therefore, correctly refused.

We agree also with the chancellor, that although a decree for a specific performance cannot be allowed, yet this is a case that requires that the bill should be retained, and a decree rendered in favor of the complainant for the amount of the valuable improvements made by him under the contract, and also for the amount he had actually paid as part of the purchase money, for the rule is, that when a purchaser enters into possession and upon the faith of a contract has made valuable improvements upon the land, and afterwards files his bill to compel a specific performance, but fails to make out such a case as entitles him to that relief, the bill may be retained for the purpose of allowing him compensation if he has not a full and adequate remedy at law.—Story's Eq. vol. 2, page 109, § 749 ; Pratt v. Lane, 9 Cranch, 493 ; 1 Johns. Ch. 131 ; Pratt v. Lyon, 4 Port. 314. When the amount to which the complainant is entitled is ascertained, either by a reference to the master, or upon an issue of *quantum damnificatus*, I think it clear that the chancellor may charge the land with the payment of the amount, unless some specific right has attached in favor of some third person upon the land, which it would be inequitable to displace in favor of the complainant. If this could not be done, the very object of retaining the bill, which is to prevent a failure of justice, might be defeated. In the case before us, the complainant made the improvements on the land which enhanced its value, upon the faith of the contract, and, no doubt, under the belief that his possession would never be disturbed, and in the same manner paid a portion of the purchase money. If he should be now remitted to the Orphans' Court, to receive a *pro rata* dividend with the other creditors of Wayland's estate, which is insolvent, injury would result to him from the contract, and the general creditors be benefitted at his expense ; for he has increased the value of the land, which increased value would be a fund for common distribution. The correct rule, I hold to be this, whenever compensation is allowed and a specific performance is denied, the land may be charged with the payment of the amount ascertained to be due to the complainant, as against the vendor and his representatives, unless some circumstance appears that would render it improper to make such a decree. But I cannot think that the insolvency of the estate of Wayland is a sufficient reason, why the land should not be charged with the payment of the sum as ascer-

tained to be due the complainant as compensation. The general creditors of the estate have acquired no specific lien on the land, and have no greater right or equity than Wayland himself had, and if we could be warranted in decreeing the amount of compensation as a charge on the land against Wayland, I see no reason why it should not be done against his heirs and administrator, although his estate may be insolvent. We, therefore, think the court erred in refusing to charge the land with the payment of the amount, ascertained to be due to the complainant, by way of compensation.

We cannot say that the chancellor erred in overruling the exception to the register's report. The complainant by his amended bill exhibited a paper, purporting to be a receipt executed by Wayland to him for the sum of four hundred dollars, dated February 1841, in full of all notes then due by complainant to Wayland. Before the hearing, the receipt was proved *viva voce* as an exhibit in the usual manner, but the register, in taking the account, refused to allow it any weight as evidence, because the instrument upon its face satisfied him that Wayland never executed it as a receipt, although the signature was genuine. The chancellor upon imspection of the paper was of the same opinion, and confirmed the report of the register. The instrument itself is not before us, and we cannot say that a paper, purporting to be a receipt, may not carry marks, or evidence upon its face, conclusive to show that it is not a genuine receipt, although the signature attached to it may be in the hand-writing of him, whose receipt it purports to be. Had the receipt been acted on by the chancellor as evidence, in his decree, before the reference was ordered, it would have then been too late to raise any objection to it in taking the account; but the equity of the bill was not in the slightest degree dependant on the receipt, nor could any question have been raised in reference to it, except in taking the account before the register; the receipt could have no influence, except in swelling the amount of compensation. The question was, therefore, raised the first time the instrument was offered to be used as evidence, and notwithstanding the signature to it may have been proved *viva voce* to be in the hand-writing of Wayland, we do not think this precludes the examination of the question of genuineness, when that question is raised by matter apparent on the face of the instrument itself, irrespective of the signature.

Mims' Ex'rs v. Sturtevant.

The only error in the decree is the refusal of the chancellor to charge the land with the sum due to the complainant. For this error the decree must be reversed, and the proper decree here rendered.

It is ordered, adjudged, and decreed, that the final decree of the chancellor be reversed, and the court here proceeding to render such decree as should have been rendered, it is ordered and decreed that the land described in the pleadings, to wit, the six acres and a fraction, claimed by the complainant to have been sold by Wayland to him, be charged with the payment of one thousand and sixty-seven dollars and fifteen cents, the amount of compensation ascertained to be due the complainant by the report of the register, and if said sum be not paid within ninety days from the rendition of this decree, the register of the court below will proceed to sell the land at public auction, at the court house in Madison county, upon giving the same notice, required by law of sheriffs in the sale of real estate, and from the proceeds of the sale of said land, he will first pay the cost of this suit, and then the amount due to the complainant, after which the administrator of Wayland will be entitled to receive the residue. It is further ordered, that the defendants in error pay the cost of this court.

PARSONS, J., not sitting.