176 So.2d 875

TENSAW LAND & TIMBER CO., Inc. et al.,

v.

Annie COVINGTON et al.

1 Div. 216.

Supreme Court of Alabama.

June 24, 1965.

Scott & Porter, Chatom, for appellees.

Edw. P. Turner, Jr., Chatom, for appellants.

HARWOOD, Justice.

On 10 July 1961, Tensaw Land and Timber Company filed an ejectment suit against Annie Covington, Wesley Covington, and Woodie Weaver, seeking to recover the possession of the Southeast quarter of the Southwest quarter of Section Three, Town-

ship Three North, Range One West in Washington County, Alabama.

On 26 July 1961, on motion of the defendants, the cause was transferred to the equity docket.

There, Annie Covington, Elton Weaver, Eva Sullivan, Johnnie Weaver (now deceased), Flossie Mae Weaver, McArthur Weaver, a minor, Woodie Weaver, a minor, Donald Weaver, a minor, and Percy Weaver, a minor, on 26 July 1961, filed their original bill against Tensaw Land and Timber Company. By amendment, Frank W. Boykin was also made a respondent.

The substance of the bill, as amended, was to the effect that Vallie Weaver, during her lifetime contracted in 1937 to purchase the land in question from the respondents for the sum of $275.00, paying $40.00 down on the day of the purchase, taking possession thereof on that day, and that she had remained in possession until the day of her death in the latter part of 1949; that Vallie Weaver died intestate and was survived by Louis Weaver, her husband, who died in 1958, and by the complainants as her children and heirs at law and by no other heirs.

The bill further alleges that Vallie Weaver actually lived on the property in question from the date of purchase until about two or three years before her death, when she moved a short distance to a house on the road, though from the date of purchase to her death, Vallie Weaver each year turpentined the entire tract and sold and took the proceeds from such operation; that more than 21 years ago Vallie Weaver caused the timber on said tract to be placed under the "Agricultural Code;" that Vallie Weaver cleared and farmed about eight acres on the tract.

The bill further avers that upon Vallie Weaver's death her husband, Louis Weaver, carried on the turpentine operations on the tract and farmed the same for the benefit of the complainants until his death, and the complainants have done the same, continuing from the death of Louis Weaver in 1958 until the date of the filing of the suit.

It is further averred that the complainants do not know if Vallie Weaver had paid in full for the land, a matter peculiarly within the knowledge of the respondents, but about two years ago the complainant, Annie Covington, offered to pay to the resident agent of the respondents, the balance due, if any, and such offer was refused. The complainants are ready, willing and able to pay any such balance as may be due on the original purchase price of $275.00.

The complainants prayed that the balance due on the purchase price be ascertained, and that complainants be adjudged the owners in fee simple of the land in question.

On the day of trial the original bill was amended to allege that the respondent, Tensaw Land and Timber Company, had purchased the interests of Eva Sullivan and Elton Weaver, two of the complainants, and that Tensaw owned a ⅔ interest in the suit land and the remaining complainants owned a ⅔ interest. It was averred that the property could not be divided among the joint owners without a sale for division.

The respondent, Frank W. Boykin, filed a general denial of the material allegations of the bill.

The respondent, Tensaw, filed a general denial of the material allegations of the bill, and also filed a cross bill in which it denied that anyone authorized by it in writing agreed in any manner to the sale of the land in question, or that anyone was authorized in writing by it to accept any payment for the land.

The cross bill further alleged that Vallie Weaver and R. M. Boykin, who is alleged to have entered into the contract for the sale of the land, are both dead and so much time has elapsed since the alleged sale that complainants are guilty of laches.

It was further averred that the alleged instrument for the sale of the land is void because in violation of the statute of frauds,

and also not being under seal, any suit thereon is barred by the statute of limitations.

Tensaw's cross bill further alleged that it was a bona fide purchaser of the land in question in 1938 and 1939 from Frank W. Boykin, the Baldwin Timber and Naval Stores, Inc., and some of the heirs of John Everett, deceased, without knowledge of any claim on the part of Vallie Weaver to the land; that Tensaw has paid taxes on the land for over twenty years, and that neither Vallie Weaver nor her successors have ever paid taxes on the land.

The cross bill also was amended on the day of trial to aver in the alternative that should the court determine that Tensaw owned only an undivided interest in the land that the same could not be equitably divided without a sale for division.

After hearing, the court entered a decree finding that Tensaw owned a 31/66 interest, that complainants, Annie Covington, Flossie Mae Sullivan, McArthur Weaver, Woodie Weaver, Donald Weaver, and Percy Weaver each owned an undivided 45/528 interest, and that Eva Sullivan and Elton Weaver each owned a 5/528 interest in the land. The court further ordered the land sold for division, and after payment of expenses of sale, court costs, and attorney's fees, that Frank W. Boykin be paid $140.00 which the court determined to be the balance due on the contract of sale, and that the remaining proceeds of the sale be divided in proportion to the interests owned in the land as above set forth.

The original respondents perfected an appeal from this decree, and the complainants below have also assigned errors.

At the hearing below it was stipulated that R. M. Boykin (who will hereinafter be referred to as Rob Boykin) was, on 22 July 1937, and continuously thereafter until his death in 1951, the manager and agent for Frank W. Boykin, and for Tensaw Land and Timber Company, from its organization to the time of Rob Boykin's death, of

the land and properties owned by either or both in Washington County, Alabama.

It was further stipulated that the tax records of Washington County show the assessment and payment of taxes on the land in question as follows:

| | |
|---|---|
| 1910–11 | Oscar Reed |
| 1912–14 | J. B. Slade and Co. |
| 1915 | R. P. Reed |
| 1916 | Oscar Reed heirs |
| 1917–34 | Everett and Boykin |
| 1935 | T. B. Pearson |
| 1936–37 | Everett and Boykin |
| 1938–40 | E. C. Vaughn |
| 1941–63 | Tensaw Land and Timber Company |

All parties agree that Oscar Reed was the owner of the suit property from 1910 to the time of his death, which from the tax records must have been prior to 1916. The evidence shows that Oscar Reed left as surviving heirs eleven children, namely, Lona Rivers, Creasy Reed, Lillie Auchenbaugh, Evie Weaver, Hattie Rivers, Lula Reed, Matilda Echols, Dave Reed, Oscar Reed, Jr., Vallie Reed, and Harry Reed.

By deeds dated 18 August 1917 and 29 May 1918, John Everett and Frank W. Boykin acquired the interests of Lona Rivers, Creasy Reed, Lillie Auchenbaugh, Evie Weaver, Hattie Rivers, Lula Reed, and Harry Reed in and to the Oscar Reed property, consisting of some 440 acres which included the 40 acres which is the subject of this suit. Thus Everett and Boykin acquired $7/11$ interest in and to the suit property.

By deed dated 2 April 1937, Frank W. Boykin acquired the interest of Matilda Echols, Dave Reed, Oscar Reed, and Vallie Weaver in and to the Oscar Reed property.

Thus on 2 April 1937, the record title to the land involved herein stood in the name of Everett and Boykin. By subsequent conveyances, Frank W. Boykin acquired the Everett interests in the property, and subsequently conveyed the property to Tensaw.

It is the contention of the original complainants that at the time Vallie Weaver

joined in the conveyance of 2 April 1937, it was upon an agreement with Rob Boykin that she would be permitted to re-purchase the 40 acres in question, a part of the 440 acres conveyed, upon her paying the sum of $275.00 therefor.

The evidence introduced below shows that at the time Vallie Weaver joined in the conveyance of 2 April 1937, she was then living upon the forty acres in question, and continued to live there until a few years before her death. She, however, continued to turpentine the forty acres, and cultivated some seven or eight acres thereof. About 21 years ago, Vallie Weaver placed the tract in the "Agricultural Code" for turpentining purposes, and received all proceeds from her operations on the land. After her death, Louis Weaver, her husband, carried on the same operations for some five years, and after his death, Annie Covington did the same for the benefit of the complainants.

The evidence further shows that while Boykin or Tensaw had turpentined their lands surrounding the forty acres in question, they had never attempted to turpentine the suit property. The evidence further shows that in 1960 or 1961, R. A. (Dick) Boykin, who succeeded Rob Boykin as agent and manager of the lands of Frank Boykin and Tensaw, began cutting some timber on the suit property, and he was stopped in such operations by Annie Covington who claimed the land as belonging to complainants. There is also evidence tending to show that R. A. (Dick) Boykin, after succeeding Rob Boykin as manager of the Frank Boykin and Tensaw lands was visited by Louis Weaver shortly after Vallie Weaver's death and discussed the Weaver claim to the land. Dick Boykin testified he knew that Vallie Weaver and Rob Boykin had some agreement as to the forty acres, but did not know what it was, and no deeds were on record concerning it. Louis told him he could not pay for the land and Dick Boykin told him he knew of nothing to do but for Louis to turpentine the land until he got his money back, and Louis did turpentine the land after that. After Louis' death Dick Boykin testified he was not aware of any claim by Vallie Weaver's heirs to the forty acres until Annie Covington stopped his crew from cutting the timber in 1960 or 1961. He then went to see Annie Covington and found she was claiming the land and asserted she had "receipts" for the land, but that the day of the trial was the first time he had seen them.

Boykin also testified he offered to try and settle the matter out of court, and that Wesley Covington made an offer of what they would do, and this offer was unacceptable. After that he marked timber on the forty acres and had it cut.

The Weaver complainants introduced several instruments into evidence, these instruments being in the form of receipts executed by Rob Boykin.

The first of such receipts is as follows:

"McIntosh, Ala.
July 22, 1937

"Received of Vallie Weaver this date $40.00 as part payment on forty acres of land in Section 3, Township 3 North, Range 1 West, S.E. Quarter of the S.W. Quarter.

/s/ R. B. Boykin"

"Balance Due $235.00"

The following receipts by R. M. Boykin were also introduced in evidence by the complainants:

"8–23–37

"Received of Vallie Weaver $10.00 as part payment of purchase price on 40 acres of land in Section 3.

"Balance Due $225.00

/s/ R. M. Boykin"

"Sept. 18, 1937
No. 40 ac.

"Received of Vallie Weaver Ten--- 00/xx Dollars. Amount piad (sic) $10.00
"Balance Due $——— R. B. Boykin"

"McIntosh, Ala.
Aug. 27, '38

"I, R. M. Boykin, have this day received $5.00 cash on the 40 acres of land in Sec. 3.

R. M. Boykin"

"McIntosh, Ala.
Feb. 28, '42

"I have this day received $50.00 on land.

R. M. Boykin"

"Feb. 19, 1944

"This is the second receit (sic) I gave Vallie Weaver $20.00 Twenty-00/xx on land.

/s/ R. M. Boykin"

These receipts total $135.00.

Under appropriate assignment of errors, counsel for appellants, Boykin and Tensaw, contend that the court erred in ordering specific performance of the alleged contract in that the same is void under the Statute of Frauds (Section 3, Title 20, Code of Alabama 1940).

The portions of our Statute of Frauds pertinent to this review provide:

"In the following cases every agreement is void, unless such agreement, or some note or memorandum thereof, expressing the consideration, is in writing, and subscribed by the party to be charged therewith, or some other person by him thereunto lawfully authorized in writing:

\* \* \* \* \* \*

"(5) Every contract for the sale of lands, tenements or hereditaments or of any interest therein, except leases for a term not longer than one year, unless the purchase money, or a portion thereof be paid, and the purchaser be put in possession of the land by the seller."

We have under assumptions most favorable to appellees an oral negotiation by an agent to convey the suit property to Vallie Weaver in consideration of Vallie Weaver's having joined with three other owners of interests in 440 acres of land in conveying said 440 acres to the principal, and the further consideration of the payment by Vallie Weaver of $275.00, the 40 acres suit property being included in the conveyance by Vallie Weaver of her interest in the 440 acres.

■■ In neither the pleading nor proof are the terms or the due dates payments of the balance of the $275.00 purchase price set forth or alluded to. Thus if the receipts signed by R. M. Boykin be deemed to be written memoranda of the oral transaction, both the oral contract and the written memoranda are too indefinite to remove this transaction from the Statute of Frauds. As stated in Alba v. Strong, 94 Ala. 163, 10 So. 242:

"The following propositions must be regarded as settled by the former decisions of this court beyond controversy: *First*, that to authorize the specific enforcement of an agreement to sell land, all the terms of the agreement must have been agreed on, leaving nothing for negotiation."

In Aday v. Echols, Adm'r, et als., 18 Ala. 353, a suit for specific performance of an oral contract to convey land, the vendee being put in possession, the bill alleged the payments were to be made in five equal annual installments. The proof was that the payments were to be made in *four* or *five* annual installments. The chancellor refused to order specific performance of the contract. In affirming this decree the court wrote:

" \* \* \* If the proof fails to establish the contract as alleged, or if any of the terms be left in doubt or uncertainty, then a specific performance cannot and ought not to be decreed, for it would then be uncertain whether the chancellor was enforcing the contract the parties had agreed upon, or whether he was making one for them, and decreeing its execution. The proof,

therefore, must not leave the contract, or any of its terms in doubt. This is the result of all the well considered cases on this subject.—See Story's Eq. vol. 2, p. 69, § 764, and authorities cited; also Goodwyn v. Ligon, 4 Port. 297, and the cases there refered to.

"Applying this principle to the allegations of the bill, and to the proof, we fully agree with the chancellor, that the evidence does not establish the contract with sufficient certainty to warrant a decree for a specific performance. * * *"

Allen v. Young, 88 Ala. 338, 6 So. 747, concerned an oral agreement for the sale of a house and lot, the vendee having been put in possession. The chancellor entered a decree for specific performance of the contract. Finding that the evidence as to the terms for the payment were indefinite and uncertain, the court wrote:

" * * * In no other class of cases is correspondence between the allegations of the bill and the proof produced to establish them more rigidly exacted. It is not sufficient that some agreement be proved. If the evidence fails to satisfactorily establish the particular agreement alleged in the bill, or leaves any of its material terms in doubt or uncertainty, equity will not lend its aid to enforce its specific performance. 'The complainant's case must be clearly made out, in harmonious pleading and proof, to entitle him to a decree.' Daniel v. Collins, 57 Ala. 625; Bogan v. Daughdrill, 51 Ala. 312; [Iron Age] Publishing Co. v. [Western Union] Telegraph Co., 83 Ala. 498, 3 South Rep. 449.

\* \* \* \* \* \*

"In Aday v. Echols, 18 Ala. 353, where the specific performance of a parol contract for the sale of land was sought, that relief was refused, though there had been a partial payment, because the proof left it uncertain whether the payments were to be made in four or five equal annual installments; the bill alleging that they were to be made in five. And in Goodwin v. Lyon, 4 Port. (Ala.) 297, specific performance of a contract of the same nature was denied because the evidence failed to show with certainty the time of payment of the purchase money, and the amount of each payment, though the vendee had made partial payment, and taken possession. * * *"

■ It is apparent that under the doctrines of the above cases the lower court erred in granting specific performance of the contract in this case because of the uncertainty of the terms relative to the payment of the purchase price for the land in question.

Counsel for appellees also argue that the appellees having been in open, notorious and hostile possession of the land for more than twenty years, they have obtained title thereto by prescription, and their possession cannot now be disturbed.

This argument overlooks the fact that Vallie Weaver's possession of the suit property was under and by virtue of the alleged contract to convey, whether that contract be valid or invalid.

■■ The relation between the vendee in possession under an executory oral contract and the vendor is that of trust. This is the foundation of the doctrine that inhibits the creation of any rights in the vendee, affecting the title of the vendor, by the mere lapse of time, or presumptions usually arising therefrom. Rankin v. Dean, 157 Ala. 490, 47 So. 1015. If there is an entry, or a continuance in possession, under a contract of purchase, by parol or in writing, so long as the purchase money is unpaid the possession of the vendee is not adverse to the vendor, but in subordination to his title, and is not protected by the Statute of Limitations, or any presumption arising from the lapse of time. Collins v. Johnson, 57 Ala. 304; Bishop v. Truett, 85 Ala. 376, 5 So. 154; East Tennessee V. & G. R. Co. v. Davis, 91 Ala. 615, 8 So. 349.

188

Our cases are clear to the conclusion that in so far as co-tenants are concerned the performance of ordinary acts of ownership in respect to the land by the one in possession does not establish that the possession is adverse to his co-tenants, whether or not they have notice of such acts, Johns v. Johns, 93 Ala. 239, 9 So. 419; Bracken v. Roberson, 220 Ala. 152, 124 So. 237; Hurst et al. v. Smith et al., 227 Ala. 664, 151 So. 825; Coppett v. Monahan, 267 Ala. 572, 103 So.2d 169, even though such act of ownership include appropriating the whole use, rents, profits and income of the land, since such acts do not constitute an ouster of the co-tenant or establish a possession adverse to them. Johnson v. Toulmin, 18 Ala. 50; Fielder v. Childs, 73 Ala. 567; Ratliff v. Ratliff, 234 Ala. 320, 175 So. 259; Markstein v. Schilleci, 258 Ala. 68, 61 So.2d 75. The relation of vendor and vendee under an executory contract of sale of land being one of trust, the rules above set forth as to adverse possession by a co-tenant cannot be deemed but to apply to vendor and vendee under an executory agreement for the sale of land where the vendee is put in possession. See Perry v. Lawson, 112 Ala. 480, 20 So. 611.

So long as Vallie Weaver held possession under the executory agreement, and the condition of payment was unmet, neither her possession nor those claiming under her could be adverse to the vendor or give rise to any presumptive right in the premises. Rankin v. Dean, supra.

The evidence tends to show that the only firm renunciation of the asserted executory contract to convey by any of the successors of Vallie Weaver occurred in 1960, when Annie Covington prohibited the timber crew of Tensaw from cutting any trees on the suit property, asserting at that time ownership of the property.

Neither party has presented any evidence relative to an accounting between the parties, nor has such question been raised in briefs.

What has been written above renders unnecessary our writing to other various assignments and cross assignments of error.

The decree of the lower court granting specific performance is due to be reversed and this cause remanded to the lower court for further proceedings not inconsistent herewith.

Reversed and remanded.

LAWSON, GOODWYN, MERRILL and COLEMAN, JJ., concur.