MADDOX, Justice.
This is the second appeal in this case. The Court’s original treatment is found in Wray v. Harris, Ala., 350 So.2d 409 (1977). Since the facts are sufficiently set out in that opinion, it is not necessary to review facts not pertinent to the issues now before us.
Eloise Wray and Charles Hatmaker filed suit in 1973 to enforce an agreement made with Irby Harris in which Harris agreed to build and lease a truck stop complex to them. A jury, answering a special interrogatory in the original action, found that the parties did, in fact, enter into a lease agreement. The agreement is as follows:
“This agreement is made and entered into on this, the 6th day of March, 1972, by and between Irby C. Harris (hereinafter referred to as Harris) and Charles Hatmaker and Eloise Wray (hereinafter referred to as Lessee).
*975 “This agreement is made for and in consideration of the mutual promises hereinafter set out:
“1. That the Lessee has, on this day, paid to Harris the sum of $1,000, receipt of which is hereby acknowledged, and the Lessee does hereby promise to pay an additional sum of $9,000 by August 1, 1972; and the total of these two payments being $10,000 shall then be considered as a contract to construct a building. If construction is not begun by 8/1/72, $1,000 deposit will be refunded.
“2. Harris does hereby contract and agree to build a building approximately 40' x 84' plus 36' x 66' containing a filling station, restaurant, and ten motel units on certain property located on Highway No. 35 within the City limits of Fort Payne, Alabama and located generally to the West of Abbott’s Marina and Shell Station. Such construction shall be started no later than August 1,1972, and after the completion of the said building and improvements on said property, he will enter into a lease with the Lessee for a monthly land rental of $350 per month for a period of ten years. At the end of that time, the Lessee may exercise their option to purchase the said property and the improvements thereon at an amount of $65,000, payable in monthly installments for ten years.
“3. The Lessee further agrees to finance the construction cost above the said amount of $10,00 at the Fort Payne Bank to be repaid within ten years from the date of the loan, such funds to be paid to Harris as the contractor and builder of the buildings referred to above. Harris further agrees to make any mortgage, or to co-sign, or to act as guaranty for the loan to aid the Lessee in obtaining the construction cost of the building to be constructed on the said property.”
The trial court declined to order specific performance at that time and ordered a remittitur of the verdict to $25,000. Wray and Hatmaker appealed. This Court reversed and remanded to the trial court with directions to grant specific performance and “to protect the rights of all parties and do complete justice between them,” or, in other words, to adjust the equities.
On remand, the trial court held a hearing to determine the cost of constructing the truck stop and found the costs to be $227,-744.85, and ordered Wray and Hatmaker to pay this amount to Harris within 30 days as a prerequisite to his ordering specific performance. We reverse again.
Our review of the record convinces us that the trial court has failed to follow the mandate of this Court on the original appeal.
In essence, the trial court’s order requires appellants to pay full construction costs plus interest over a period of years when Harris, who was in default, was receiving substantial rental income on the investment. Therefore, the order, contrary to this Court’s directions, would allow Harris to profit by his own wrong. In short, the order would require Wray and Hatmaker to pay the entire costs of improvements on the land, improvements which Harris, during default, has rented to third parties.
After reviewing the record on original submission and the record on remand, we are convinced that the trial judge failed to do equity between the parties. Under the agreement, Harris was entitled to only $350 per month as rental. The record shows that Harris actually received much more in net rental than $350 per month after the date Wray and Hatmaker were entitled to possession.
Evidence was presented in the original trial that Harris received rental income from this property through January, 1975, in the sum of $89,389.00.
After remand, Wray and Hatmaker filed a request for the production of documents which would show the receipt of rents from the subject property from all tenants, including gasoline revenues, from the date of jury trial, that is, September 10, 1976, to the date of production. From the date of trial to May 2, 1978, Harris had additional receipts from the subject property in the sum of $118,787.90.
*976 These two figures total $208,176.90, which has been received from the subject property by Harris. Even though these are gross rentals, the evidence of the net rentals received is more than sufficient to support the decree which this Court will make.
In other words, the record shows that Harris, during his default, received net rents in a sum greatly in excess of the $350 per month which the agreement entitled him to receive. Harris’ own accountant gave specific evidence on this issue.
We now discuss the question of the trial court’s assessment of damages on the issue of specific performance.
The trial court found:
“The Supreme Court has directed this court to enter an Order granting specific performance and to grant specific performance of the agreement entered into by the parties on March 6, 1972, the court found that it was necessary to ascertain the cost of construction of the truck stop and caused this matter to be set down for a hearing on the 24th day of May, 1978 to hear evidence concerning the cost of construction. The court heard the testimony ore tenus and from the evidence presented finds that the cost of construction was $227,744.85.
“The agreement entered into by the parties on the 6th day of March, 1972 provides that the lessee will finance the construction. The evidence reveals that the lessor, Harris, financed the construction. It appears that Harris spent $93,-375.00 in 1972 on construction and $68,-299.07 in 1973. Interest on the $93,375.00 at 6% for six (6) years is $33,615.00. Harris spent $68,299.07 in 1973 on construction and interest at 6% for five (5) years is $20,489.70. One other item of construction cost is an awning added in 1975 at the cost of $10,684.00 with interest for two (2) years at 6% ($1,282.08) amounts to $11,966.08. The court finds the amount of the construction cost to be $227,-744.85.”
A review of the record in conjunction with the lease agreement clearly shows an understanding by the parties that construction costs would be $90,000; however, on remand, Harris’ certified public accountant testified that $93,375 was expended by Harris on construction in 1972. When asked if his records showed expenditures for construction after 1972, Harris’ CPA noted only an additional expense of $10,684 for an awning in 1975. Therefore, there is evidence that Harris spent $3,375 more on construction than originally contemplated. The trial court’s finding that Harris actually spent $93,375 in 1972, is affirmed.
Harris testified and identified numerous checks which are exhibits to the testimony. These checks represent expenditures on behalf of Harris in the construction of the building as well as operations, such as utility bills. They also include the monthly installment to the Fort Payne Bank of $928.88 on the $80,000 loan to the Fort Payne Bank.
These expenses included by the trial court in finding total construction costs of $227,-744.85 clearly were not attributable to construction costs. We conclude that the evidence will sufficiently support only a finding that the cost of constructing the truck stop complex was $93,375.
Wray and Hatmaker contend that Harris, having been in default after 1973, is not entitled to reimbursement for improvements placed upon the subject land since that time. The trial court charged Wray and Hatmaker with the costs of constructing an awning added in 1975, at a cost of $10,684, plus 6% interest for two years. In Coon v. Henderson, 242 Ala. 144, 5 So.2d 397 (1941), this Court stated:
“. . . A mortgagee in possession before foreclosure is responsible on redemption for rents collected, or for rental value if he used the property. From that amount he may deduct repairs and taxes, but not improvements. jfc sfc $ sf: j)c $
“The same principle applies to a conditional vendor in possession in the absence of a different contract. . . . ” (Emphasis added.)
It is the general rule that “provision should not be made for improvements voluntarily *977 made by the vendor without notice to, or request from the purchaser . . .” 81A, C.J.S. Specific Performance § 209b.
Harris argues that the awning included in the court’s decree was “essential to, material to, and in direct compliance with the contract entered into between the parties.
A review of the written contract indicates that the awning was not constructed in “direct compliance” therewith. At best, the awning is incidental to the operation of the truck stop. The fact that it was erected two years after the improvements contracted for were completed indicates that the decision to construct the awning was solely Harris’. At that time he was in default, and there is no evidence that Wray or Hat-maker was ever consulted.
Wray and Hatmaker paid Harris $10,000 in earnest money as agreed in the 1972 contract. This money remained in the possession of Harris to be credited against construction costs. A sum of $80,000 was borrowed from the Fort Payne Bank. Harris paid installments on this loan which, under the terms of the contract, Wray and Hat-maker should have been paying. Payments made by Harris, however, are more than offset by income received while he was in default of his agreement with Wray and Hatmaker, and it is undisputed that the loan was for ten years and that the building was being depreciated by Harris on a 20-year straight-line method.
Based on the foregoing, we are convinced that the decree of the trial court is clearly and palpably wrong and inequitable and is due to be reversed, in part. The trial court attempts to make a new contract for the parties, not enforce the one this Court ordered enforced. It is obvious that the trial court’s finding that the amount of construction costs was $227,744.85 is erroneous. The trial judge included in this sum money borrowed and already included in the original construction costs, and also included other items of maintenance, and directed payment of the entire amount, with interest, in thirty days. This the court should not have done.
Harris is entitled to remove from the premises items of personal property which are not attached to the real estate. In the event Wray and Hatmaker decide to exercise their option to purchase, the terms of the agreement control, and not the court order, which attempts to make a new agreement for the parties.
In remanding this case, we direct that Wray and Hatmaker are to be placed into possession of the truck stop complex within twenty-eight days after the mandate of this Court is issued. Wray and Hatmaker are to assume payment of the construction loan at the Fort Payne Bank from the date they are placed in possession, as provided in the contract, and pay Harris $350 per month for the time remaining in their ten-year agreement. Wray and Hatmaker must also pay Harris the difference between the contemplated cost of $90,000 and the actual cost of $93,375, or $3,375.
AFFIRMED, IN PART; REVERSED, IN PART; AND REMANDED WITH DIRECTIONS.
TORBERT, C. J., and JONES, SHORES and BEATTY, JJ., concur.