This was a suit for specific performance of a written contract for the sale of real property. Plaintiff/appellee Dennis K. Thornburgh filed the suit against defendant/appellant Louise Edwards and asked the court to grant him specific performance of the contract and also asked that the court award damages against Edwards for fraud. After a non-jury trial, the court decreed specific performance of the contract, ordered that a real estate commission be paid to the realty company, but denied Thornburgh's claim of fraud against Edwards. Appellant Edwards appealed and claims that specific performance of the contract was improper because the contract omitted material terms of the sale and left some material matters to be agreed upon.
To determine whether appellant is correct, we must examine the evidence presented in connection with each party's claim. The evidence was conflicting on some issues, but there was evidence from which the trial court could have found, as follows:
Louise Edwards, the defendant below, entered into a listing agreement with Buddy Bone Realty, Inc., on September 21, 1978, for the sale of real property belonging to her, located in Elmore County, on Trotters Trail Road.
In early November, 1978, Dennis Thornburgh became aware that Edwards's property in Elmore County was for sale and contacted her to inquire whether a real estate agent was involved. Thornburgh then contacted Dana Hall at Buddy Bone Realty, Inc., to determine the specifics on the property. He subsequently made some oral offers.
On November 8, 1978, Thornburgh signed a contract to purchase Edwards's property at a price of $26,584.50. This offer was submitted to Edwards by Dana Hall of Buddy Bone Realty, Inc. Edwards did not accept this original offer and made a counter-offer in the amount of $27,142.25, by crossing through the original amount listed on the contract, printing in the new figure of $27,142.25, and signing the contract. Upon being informed of Edwards's counteroffer, Thornburgh rejected this offer and told Dana Hall that he was leaving open his original offer to let Edwards think about it while he looked at some more property. Upon being notified of Thornburgh's position, Edwards then crossed out her counteroffer, wrote in the original figure of $26,584.50 and initialed it. Edwards testified that when she wrote in the figure of $26,584.50 (the original offer of Thornburgh), and put her initials by it, she intended this to be an offer and was willing to sell her property for this amount. Edwards further stated that this was an offer based on what the contract reflected at that time. At the time Edwards initialed the figure $26,584.50, the down payment had been *Page 680 
changed to fifty percent (50%), and was also initialed by her.
Thornburgh testified that Dana Hall contacted him after Edwards had initialed the original figure of $26,584.50, and he concurred that a contract had been made. Both Thornburgh and Hall testified that at that time there were no terms left open for discussion and no further negotiations were contemplated. Thornburgh testified that Edwards, in a telephone conversation which occurred a couple of days later, "pleaded with me to let her out of the contract." Thornburgh testified that he had never revoked his original offer of $26,584.50, nor had he withdrawn it from Edwards' consideration. Hall confirmed this fact and also stated that Edwards had not attempted to take her property off the market until days after Edwards had been told she had entered into a contract. Both Edwards and Thornburgh knew there was a contract for her property on Trotters Trail Road, prior to her attempt to take it off the market.
There was testimony at the trial which tended to show that Edwards was concerned about the tax consequences of the sale, but the court could have found that Thornburgh did not have knowledge of this concern until after the contract had been agreed upon. In any event, the court could have determined that Thornburgh was willing to meet whatever requirements Edwards wanted pertaining to any deferred payment of the balance of the purchase price.
The trial court found that the contract between Edwards and Thornburgh was "clear, concise and unambiguous, that Mrs. Edwards agreed to sell all the acreage owned by her located on Trotters Trail Road in Elmore County, Alabama, that it was agreed to by the parties that the sales price was $26,584.50, that the parties agreed Mrs. Edwards is entitled to fifty (50) percent payment at closing and the balance whenever she desired to receive it, without interest, that the Buddy Bone Realty, Inc. is entitled, pursuant to that contract, to a commission of $2,658.45 from the said sale; . . ." The court then decreed specific performance of the contract, but found for the defendant, Edwards, on Thornburgh's fraud count.
Two principles of law should be stated at the outset as they are applicable in the present case. First, the equitable remedy of specific performance rests largely in the discretion of the trial court and may be overturned only if shown to be palpably erroneous. Wray v. Harris, 350 So.2d 409 (Ala. 1977), appeal after remand, 370 So.2d 974 (Ala. 1979). Second, the findings of a trial court hearing a case ore tenus, as in the present case, will not be overturned unless palpably erroneous. Smithv. McNaughton, 378 So.2d 703 (Ala. 1979).
In order to authorize a decree of specific performance of an agreement to sell land, all the terms of the agreement must have been agreed upon, leaving nothing for negotiation.Murphree v. Henson, 289 Ala. 340, 267 So.2d 414 (1972); TensawLand Timber Co. v. Covington, 278 Ala. 181, 176 So.2d 875
(1965). Appellant contends that the present contract is not subject to a decree of specific performance because there was left open the time for payment of the balance of the purchase price after the down payment was paid.
The trial court found that the parties agreed that the balance would be paid to Edwards whenever she decided to receive it. As previously stated, there was evidence that Edwards was concerned about the tax consequences of the sale and wanted to receive the balance of the purchase price in installments, in order to obtain favorable capital gains treatment. Furthermore, Thornburgh and the real estate agent, Dana Hall testified that the time for payment was discussed and that Edwards was uncertain as to when would be the most advantageous time for her to receive the balance. According to Thornburgh, he was not concerned when the balance was required because he had arranged financing and was assured of having the balance at any time it should be required of him. The determination by the trial court that the contract did not omit material terms of the sale and leave some material facts to be agreed upon *Page 681 
is amply supported by the evidence. The finding of the trial court was not palpably erroneous, and there was sufficient certainty in the terms of the contract to support a decree of specific performance.
Appellant's second argument is that no contract could have existed because she withdrew her counter-offer. We have already set out the facts, but a brief summary of the facts indicate the following sequence of events: (1) Thornburgh made an offer of $26,584.50 by the contract for sale dated November 8, 1978; (2) Edwards rejected that offer by crossing out that figure and made a counter-offer of $27,142.25 by writing in the new figure and signing the contract; (3) Thornburgh orally rejected the counter-offer and stated that his original offer was still open; and (4) Edwards accepted the "original offer" by crossing out her counter-offer, writing in the original figure and initialing the contract thereby.
This sequence of events was held sufficient to create a contract in J.R. Watkins Co. v. Stewart, 220 Ala. 43,124 So. 86 (1929), where it was held that a contract could be formed on the basis of an original offer, even after a rejection and counter-offer, if the original offeror consented and the original offeree accepted the terms of the original offer.
The trial court apparently found that the above sequence of events occurred, and since there was evidence to support such a finding, we cannot disturb that finding unless it is palpably erroneous. That finding is not palpably wrong; therefore, the judgment of the trial court is due to be affirmed.
AFFIRMED.
TORBERT, C.J., and JONES, SHORES and BEATTY, JJ., concur.