MADDOX, Justice.
This case involves an oral agreement pertaining to real property, and the critical question is whether the agreement could be specifically enforced as an exception to the requirements of the Statute of Frauds.
In late 1978, or early 1979, the plaintiff/appellant C.D. Walker agreed with the defendants/appellees Billy Sandlin and Nate Harvell to build German Village Apartments on land then owned by the late James Nearen. As part of the arrangement, Walker paid $28,000 and Sandlin and Harvell paid $20,000 to Mr. Nearen to transfer the title of the land to Walker so that he could finance the transaction.
Interest rates began to escalate, and in January and February 1979, Sandlin and Harvell went to Walker and discussed construction of the apartment units. Walker agreed to build the units at $18.00 per square foot for the two-bedroom units and $20.00 per square foot for the one-bedroom units, utilizing the least expensive materials available. Sandlin and Harvell obtained architectural drawings and gave a copy to Walker.
Sandlin and Harvell attempted to finance the construction but were unable to get financing. The parties agreed that Walker would furnish the materials and construct the units and would carry the loan for twenty-five years at 12% interest.
Walker built six buildings, and, upon completion of each, turned them over to Sandlin and Harvell, who rented them out. *1056 The trial court found that the parties agreed that site preparation, city permit and license, connections to water and sewage, and construction of streets, curbs, and paving would originally be paid for by Walker, and that, at the closing, these costs would be included in the closing amount.
Because of a delay in closing the transaction, at some point Walker demanded that Sandlin and Harvell pay $10,000 per month on the interest and mortgage. Sandlin and Harvell paid Walker $28,300 in 1980, $70,-650 in 1981, $107,750 in 1982, and $50,000 in 1983. The trial court found that Sandlin and Harvell invested $20,000 in the land, as heretofore stated, $18,000 for a swimming pool, $19,000 for paving, $4,000 for curbs, $7,000 for landscaping, $9,500 for a television tower and wiring, and $5,000 for draperies.
Delivery of the finished units began in May 1980. Units were also delivered in June 1980, March, June, and August 1981, and May 1982; Sandlin and Harvell took possession each time, and they have stayed on the property and rented, managed, and maintained the units ever since.
When disagreements arose and the parties were unable to reach a final settlement as to the amount owed, Walker initiated this lawsuit to evict the defendants from his property. Sandlin and Harvell counterclaimed, asking the court to order specific performance of the alleged oral agreement to build and convey the apartments, to set off $400,000 for unworkmanlike construction and to establish and grant a mortgage for whatever amount was due.
The trial court denied Walker’s claim for statutory ejectment and granted Sandlin and Harvell’s claim for specific performance. The court ordered further testimony to determine the amount due under the contract as well as any set-off for unwork-manlike construction. After taking further testimony and making an inspection of the apartment complex, the trial court found a primary price of $1,299,500, deducted $306,-700 for money paid, and deducted $129,601 for defects and repairs. Accordingly, the trial court arrived at a price of $863,199 and ordered a mortgage, setting its term at 25 years. The court further decreed the amount of yearly and monthly payments, the annual percentage rate of interest, the manner in which Sandlin and Harvell could accelerate payments, and the status of existing mortgages on the property.
On appeal, Walker first contends that the trial court erred in ordering specific performance and finding a valid and enforceable oral contract when the parties never agreed to the price or manner of payment.
At the outset, we note two principles of law which are pertinent to the case at hand. These principles are set forth in Edwards v. Thornburgh, 396 So.2d 678 (Ala.1981), as follows:
“First, the equitable remedy of specific performance rests largely in the discretion of the trial court and may be overturned only if shown to be palpably erroneous. Wray v. Harris, 350 So.2d 409 (Ala.1977), appeal after remand, 370 So.2d 974 (Ala.1979). Second, the findings of a trial court hearing a case ore tenus, as in the present case, will not be overturned unless palpably erroneous. Smith v. McNaughton, 378 So.2d 703 (Ala.1979).”
396 So.2d at 680.
Here, the trial court found a valid contract existed between the parties. The parties agreed that Walker would construct the apartment units at $18.00 per square foot for the two-bedrooms and $20.00 per square foot for the one-bedroom units. The number of units was also fixed. Additionally, it was agreed that Walker would furnish the least expensive materials available and would carry the loan for 25 years at 12%. The court concluded that “the agreement carried out by the parties was that Sandlin and Harvell would take possession and owe Walker 12% interest for the amount invested in construction from the time they took possession and that [at] the final closing, when Sandlin and Harvell took title to the property and gave a mortgage to Walker, the equities of incidental costs would be added on.” We find that *1057 the trial court’s conclusion that a valid contract existed between the parties is supported by the evidence. The finding of the trial court was not palpably erroneous, and there was sufficient certainty in the terms of the contract to support a decree of specific performance.
Second, Walker contends that the trial court erred by failing to invalidate the oral agreement as a violation of the Statute of Frauds, or in failing to invalidate the alleged contract as void and unenforceable.
Under the Statute of Frauds, a contract for the sale of real property is not specifically enforceable unless there is a sufficient writing thereof signed by the party to be charged, “unless the purchase money, or a portion thereof, is paid and the purchaser is put in possession of the land by the seller.” Code 1975, § 8-9-2. Walker does not dispute the fact that the payments were sufficient to activate the “part performance” exception. Instead, Walker contends that Sandlin and Harvell did not take possession under the contract. Walker cites Houston v. McClure, 425 So.2d 1114 (Ala.1983), for the proposition that mere possession of land by the purchaser without proof that the vendor consented to the possession is not sufficient to satisfy the possession exception to the Statute of Frauds. We find that the principle of law in Houston is not applicable to the facts in this case.
In Houston, the purchasers’ acts of possession consisted of going onto the lot and cutting the grass, cleaning the grounds, and adding onto an existing pier. This court held that the acts did not satisfy the “part performance exception” to the Statute of Frauds, because there was evidence that the acts of possession were not referable exclusively to the contract, since there was evidence that the vendors had allowed the purchasers to use the lot free of charge during a rodeo each summer, at which time purchasers were permitted to tie their boat to the pier, cut the grass, clean the area, and hold fish-fries on the property.
Here, the trial court found, as a matter of law, that Sandlin and Harvell did not take possession as lessees. Reynolds v. Bryant, 281 Ala. 372, 202 So.2d 734 (1967). In addition, there is ample evidence that Sandlin and Harvell took possession pursuant to the contract. The trial court found the following:
“S and H paid Nearen $1,000.00 down on the land with a contract to purchase for $48,000.00.”

“There was further agreement between the parties that the purchase price of the 3.8 acres would be $48,000.00 that S and H would pay $20,000.00 of that

“The evidence was that S and H paid W in the year 1980 — $28,300.00, in 1981 —$70,650.00, in 1982 — $107,750.00 and in 1983 — $50,000.00, being a total of $256,-700.00.”

“The evidence further shows that delivery of finished units began in May of 1980, June of 1980, March of 1981, June and August of 1981, and May of 1982 and that S and H took possession each time, stayed on the property and has rented, managed and maintained the units ever since.”
We hold that the above evidence supports the trial court’s finding that Sand-lin and Harvell paid a portion of the purchase money and that they were put in possession of the buildings pursuant to the terms of the contract. The “part performance” exception to the Statute of Frauds was satisfied; therefore, the trial court did not err in failing to invalidate the oral agreement.
Because this Court has determined that the doctrine of specific performance is applicable to the facts presented, it is unnecessary for us to address Walker’s third issue, which alleges that Sandlin and Har-vell should be ejected from the property.
The trial court’s finding is supported by the evidence and is not palpably erroneous; *1058 therefore, the judgment of the trial court is due to be affirmed.
AFFIRMED.
TORBERT, C.J., and JONES, SHORES and BEATTY, JJ., concur.