816 So.2d 486 (2001)
Baron SHACKLETTE
v.
Ray K. DRAWDY and Jewell Drawdy.
2991008.
Court of Civil Appeals of Alabama.
February 23, 2001.
Rehearing Denied June 1, 2001.
Certiorari Denied October 5, 2001.
*487 Russell L. Irby, Eufaula; and W. Thomas Gaither, Eufaula, for appellant.
Mark S. Carter, Phenix City, for appellees.
Alabama Supreme Court 1001661.
PER CURIAM.
Ray K. Drawdy and Jewell Drawdy sued Baron Shacklette for specific performance of a real-estate sales contract. Following a nonjury trial, the trial court ordered specific performance. Shacklette appealed. The supreme court transferred this case to this court, pursuant to § 12-2-7(6), Ala.Code 1975.
The dispositive issue is whether the following agreement is an enforceable contract:
"To: Baron Shacklette
"Contract to purchase property located at 250 Continuation St., which includes 114 acres, home, rental house, barns, buildings, etc., with contents of all above items inventoried and agreed upon.
"Total Price $225,000 + Capital Improvements = $250,000.00

"After a down payment of $50,000.00, Mr. Shacklette will hold a mortgage of $200,000.00, paid with minimum yearly payments of principal only at $20,000, until such time as Mr. Shacklette gives up his personal control and the Drawdys take possession of said property. At that time, the Drawdys will begin making mortgage payments at a minimum of $20,000 per year with a simple interest rate of 6%; beginning at the time of possession of said property until a total of $200,000 principal is paid. There is no penalty for early payment.
"Payments will be made quarterly at the rate of $5,000. per quarter.
"Helen Shacklette will be able to fish in the lake on the above listed property."
 "/s/ Jewell Drawdy
 "/s/ B.I. Shacklette
 "/s/ Donald R. Drawdy
 "/s/ Frances E. Drawdy
 "/s/ Ray Drawdy"
We note that the handwritten agreement is not dated. However, on March 18, 1998, Jewell Drawdy issued a $15,000 check, purporting to be for the down payment, to Shacklette. On March 28, 1998, Shacklette's lawyer sent the Drawdys a *488 letter notifying them that Shacklette did not intend to be bound by the agreement, and the lawyer returned the check.
Specific performance may be ordered where the contract is just, fair, reasonable, reasonably certain in respect to the subject matter and terms, and founded on valuable consideration. Laketate, Inc. v. Cleghon, 533 So.2d 562 (Ala.1988). Whether to order specific performance is largely within the trial court's discretion. Laketate, supra. When the decision of the trial court to grant or to deny specific performance is based on ore tenus evidence, its decision will not be overturned on appeal unless it is shown to be plainly and palpably wrong. Duncan v. Rossuck, 621 So.2d 1313 (Ala.1993).
In 1987, the Drawdys, who reside in Lakeland, Florida, began to use property owned by Shacklette for fishing and hunting when they visited the area. Shacklette charged the Drawdys $150 a year. The Drawdys' son, Donald Ray Drawdy, and his wife, Frances Drawdy, in 1987 also began to use the property to hunt and fish when they visited, and they also were charged $150 a year. That same year, Ray, Jewell, Donald Ray, and Frances wrote a note to Shacklette asking if he would agree to sell his "place" for $225,000. In 1997, Ray, Jewell, Donald Ray, and Frances offered to buy Shacklette's property for "$225,000 + capital improvements = $250,000." In 1998, Ray, Jewell, Donald Ray, and Frances again offered to buy the property for $250,000, including capital improvements.
Ray and Jewell failed to comply with Rule 19, Ala. R. Civ. P. Donald Ray and Frances signed the agreement the trial court purported to enforce, but were not parties to the specific-performance action, nor are they parties to this appeal. Although no party has raised this issue, matters concerning Rule 19, Ala. R. Civ. P., and its joinder provision may be raised by the appellate court ex mero motu. Jamison, Money, Farmer & Co. v. Standeffer, 678 So.2d 1061, 1067 (Ala.1996).
Rule 19(a) provides:
"(a) ... A person who is subject to jurisdiction of the court shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest."
A person shall be joined as a party in an action if, in that person's absence, complete relief cannot be accorded among the parties. Pursuant to Rule 19(b), the court must decide "whether in equity and good conscience" the action can proceed without that person. Donald Ray and Frances had paid to rent land from Shacklette, as had Ray and Jewell. In 1987, 1997, and 1998 Donald Ray and Frances, along with Ray and Jewell, offered to buy Shacklette's property. According to Jewell, Donald Ray and Frances had planned to live on the property. Frances actually wrote the agreement at issue in this case. Given these facts and the fact that nothing indicates that Donald Ray and Frances were mere witnesses to the document, it appears that Donald Ray and Frances were agreeing to buy the property along with Ray and Jewell. Therefore, Donald Ray and Frances had an interest in the property and were indispensable parties in *489 this specific-performance action to enforce the agreement.
In an action, such as one for specific performance, where the final judgment affects title, ownership, or an interest in real property, each possessor of title, ownership, or an interest, must be made a party to the action. Wilson v. Thomason, 406 So.2d 871 (Ala.1981). For this reason, the trial court should have denied Ray and Jewell's request for specific performance. Because Donald Ray and Frances were not joined as plaintiffs, Shacklette could have been subject to a second lawsuit by Donald Ray and Frances for specific performance.
The trial court should have also denied specific performance because of the ambiguities in the agreement. The agreement does not adequately identify the propertyit does not state in which city or county it is located. The agreement provides that all contents in the house, rental home, barns, and buildings were part of the sale and had been inventoried and agreed upon. According to Jewell's own testimony, the parties had not agreed upon any of the personal items to be included in the sale. Additionally, there is no date on the agreement and the agreement states no closing date on which performance was to occur. The agreement uses the phrase "when Mr. Shacklette gives up personal control." It is unclear what this phrase means. It could mean that Shacklette had a life estate regardless of whether he lived on the property; it could mean that if Shacklette was put into a nursing home, then the Drawdys could take possession and begin making additional yearly mortgage payments; or it could mean a number of other things.
At best, what the Drawdys had was an agreement to make a future agreement. Generally, agreements to later agree are not enforceable. Clanton v. Bains Oil Co., 417 So.2d 149, 151 (Ala.1982); Alexander v. Petroleum Installation Co., 695 So.2d 30, 31 (Ala.Civ.App.1996). Our supreme court has held that in order to be enforceable, "a contract to enter into a future contract must be definite and certain in all of its terms and conditions so that the court can know what the parties have agreed upon." Muscle Shoals Aviation, Inc. v. Muscle Shoals Airport Auth., 508 So.2d 225, 228 (Ala.1987). The agreement in this case has several indefinite terms, including the date of the future real-estate sales contract, as well as the contingencies that must occur before the parties are required to perform.
Additionally, the trial court should have denied specific performance on the grounds that the Drawdys failed to perform all the obligations precedent on their part before Shacklette had to perform, i.e., the Drawdys failed to tender the correct amount for the down payment. Frances wrote the agreement, whereby the Drawdys offered to pay $50,000 as a down payment. The Drawdys tendered a check to Shacklette for $15,000. According to Jewell, the $15,000 was a "partial down payment." However, this does not comply with the agreement. Specific performance cannot be enforced in favor of a party who has not fully and fairly performed all the conditions precedent on his part that give rise to the obligation of the other party. Moore v. Lovelace, 413 So.2d 1100 (Ala.1982).
We note that the Drawdys make much of the fact that Shacklette had a law degree from Harvard University. However, Shacklette was 88 years old in 1998 and was legally blind without his glasses. He became confused when questioned by his *490 own attorney.[1]
We reverse the judgment of the trial court ordering specific performance and remand the case for an order consistent with this opinion.
REVERSED AND REMANDED.
YATES, P.J., and THOMPSON and PITTMAN, JJ., concur.
CRAWLEY and MURDOCK, JJ., concur in the result.
MURDOCK, Judge, concurring in the result.
I concur in the result reached by the majority. I write separately to note what, in my opinion, is the proper application of the law to the facts of this case in certain respects.
I construe the contract between the parties as calling for a down payment of $50,000 and, as is typically the case in real estate contracts, for the making of that down payment at a "closing" at which the required deed to the contract vendees and the required promissory note and mortgage to the vendor (if, as here, the vendor is financing the purchase) are delivered. No such closing ever occurred in this case. I therefore see no breach by the Drawdys in this respect. The payment of $15,000 by the Drawdys on March 18, 1998, in my opinion, is properly viewed as simply the payment of a binder, or earnest money.
As for the alleged ambiguities in the contract, I believe the contract is sufficiently certain with respect to most of the material terms to allow specific performance. The property is described by its street address, by the number of acres included in the parcels, and by the improvements to the property. This is enough, particularly in light of attendant circumstances, to identify the specific property involved and to allow enforcement of the contract. See, e.g., Shelley v. Murphy, 234 Ala. 311, 313, 174 So. 506, 507 (1937); Martin v. Baines, 217 Ala. 326, 329, 116 So. 341, 343-44 (1928). Although there is no closing date specified, Alabama law requires that a sale of real estate under such a contract be closed within a "reasonable time." Smith v. Pope, 280 Ala. 662, 666, 197 So.2d 767, 770 (1967). As for the "contents" of the improvements on Shacklette's property that were to be inventoried by the parties, the Drawdys have waived any right to such contents.
I am concerned, however, by the apparent agreement of the parties that Shacklette will retain in the real property an interest of some natureexactly what, we are not sureuntil he "gives up personal control" of the property. I agree with the majority that this phrase could mean any number of things. Does "personal control" require physical possession? If Shacklette ceased to reside on the property, could he still be said to exercise such personal control? If Shacklette became incompetent, could a conservator continue to "control" the property on his behalf? The answers to these and other questions are unknown.
Section 8-1-41(6), Ala.Code 1975, provides, in part, that specific performance of an agreement cannot be enforced if the terms of the agreement "are not sufficiently certain to make the precise act which is to be done clearly ascertainable." When the terms of an agreement are not sufficiently certain, "specific performance cannot and ought not to be decreed, for it would then be uncertain whether the *491 [court] was enforcing the contract the parties had agreed upon, or whether [it] was making one for them, and decreeing its execution." Aday v. Echols, 18 Ala. 353, 355-56 (1850). In my opinion, if this court were to affirm the grant of specific performance in this case, we would be required to write a material portion of the parties' agreement for them. This we cannot do. Tensaw Land & Timber Co. v. Covington, 278 Ala. 181, 186-87, 176 So.2d 875, 880 (1965).
CRAWLEY, J., concurs.
NOTES
[1] We pretermit any discussion of Shacklette's argument that his wife, even though they had a prenuptial agreement, should have signed the 1998 agreement in order for it to be enforceable.